Argued May 5, affirmed September 24, petition for rehearing denied November 18, 1969. Petition for writ of certiorari denied by United States Supreme Court March 23, 1970

GREEN ᴇᴛ ᴀʟ., *Appellants, v.* WHEELER ᴇᴛ ᴀʟ., *Respondents.*

458 P. 2d 938

*James K. Gardner,* Hillsboro, argued the cause for appellants. With him on the briefs were Leo Levenson, Portland, and John C. Caldwell, Oregon City.

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for respondent State Engineer. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Gene B. Conklin,* Pendleton, argued the cause for respondents Ernest R. and Waldo H. Cramer and Leota Martin.

Respondents M. M. and F. F. McDole filed an answering brief pro se.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is a suit for a declaratory judgment in which plaintiffs seek a decree declaring null and void an order of the State Engineer cancelling plaintiffs' permit to appropriate certain ground waters. Plaintiffs appeal from a decree sustaining the State Engineer's order.

On March 29, 1957, G. W. Redwine applied to the State Engineer for a permit to construct a well and appropriate ground water to 125 acres of the applicants' lands in Umatilla County. The mailing or post office address on the application was stated as "Hermiston, Oregon." The application was returned to Redwine at that address for some corrections and the application was subsequently sent back to the State Engineer's office with the corrections made.

On May 20, 1957, permit No. G-527 was issued to Redwine for construction of a well. The terms of the permit required that construction commence on or before May 20, 1958, that the construction be completed on or before October 1, 1958, and that the water be applied to a beneficial use on or before October 1, 1959.[1]

On March 13, 1958, a Water Well Report was filed with the State Engineer's office on behalf of Redwine by the driller showing that the well had been completed.

In June, 1958 G. W. Redwine and his wife began negotiations to sell the property in question to plaintiffs Lyle and Jane Miller. Representations were

---

[1] ORS 537.625 provides, in part, that:

"* * * If the application is approved, the indorsed application constitutes a permit to appropriate the ground water, and the applicant, upon receipt thereof, may withdraw the ground water and apply it to a beneficial use. * * *"

made by the Redwines to the plaintiff purchasers that a water certificate had been perfected on the well and that nothing further need be done. The property was sold to the Millers on July 2, 1958. They took possession of the property on July 4, 1958.[2] Mr. Redwine died on July 7, 1958.

Plaintiffs did not record the assignment of the permit as required by ORS 537.220.[3]

Not having received the information showing completion of the well on October 1, 1958, as required by ORS 537.630 and by the terms of the permit, the State Engineer, on October 8, 1958, mailed a postal card to Redwine addressed to Hermiston, Oregon, his address of record, purporting to notify Redwine that the time for completion of construction by October 1, 1958 had expired and that Redwine should either notify the State Engineer of completion of construction or request an extension of time. As we have noted above, Redwine had died prior to this time. The postal card was not returned.

On October 8, 1959, another postal card was mailed to G. W. Redwine at Hermiston, Oregon purporting to notify him that the time had expired for applying the water to a beneficial use and that the permittee should notify the State Engineer of such use or request an extension of time or to notify the State Engineer if

[2] When the Millers took possession of the property they discovered that the well pumped large amounts of sand preventing the irrigation they had contemplated. During the next two years they employed two separate well drillers and expended $3,500 in eliminating the sand. They expended an additional $16,000 in irrigation equipment to apply the water to the land.

[3] ORS 537.220 provides:

"Any permit or license to appropriate water may be assigned, subject to the conditions of the permit, but no such assignment shall be binding, except upon the parties thereto, unless filed for record in the office of the State Engineer."

the permit should be cancelled. This postal card was not returned.

On January 11, 1960, pursuant to ORS 537.260 (1), the State Engineer mailed a "Notice of Proposed Cancellation," by certified mail to G. W. Redwine, Hermiston, Oregon, his address of record. On January 15, 1960 this letter was returned "unclaimed" to the State Engineer after delivery had been attempted at two additional addresses at which Mrs. Redwine had resided at various times subsequent to her husband's death in July, 1958.

On August 9, 1960, permit No. G-527 was cancelled by the State Engineer. On August 15, 1960, a postal card was mailed by the State Engineer to Redwine at Hermiston, Oregon stating that the permit had been cancelled. This postal card was never returned to the State Engineer.

In November, 1966 the Millers were notified by the watermaster that they probably would not be permitted to use the water until their alleged water right was "straightened up." Plaintiffs Miller and Mrs. Redwine then brought this suit to obtain a declaration of their rights.

Plaintiffs contend that when the State Engineer approved Redwine's application in 1957 and issued Permit No. G-527, Redwine was entitled to appropriate ground water subject to the conditions stated in the permit which, it is claimed, were met when the Well Driller's Report was filed with the State Engineer. It is argued that once the permit was issued and the water was applied to the 30 acres the permittee acquired a vested property right to appropriate ground water, and that the permittee can be deprived of this

vested right only if the procedure in ORS 537.720 is followed. ORS 537.720 provides as follows:

"Whenever, after notice to and opportunity to be heard by such holder, the State Engineer finds that the holder of any permit or certificate of registration issued under ORS 537.505 to 537.795 is wilfully violating any provision of such permit or certificate of registration or any provision of ORS 537.505 to 537.795, the State Engineer may cancel or suspend such permit or certificate of registration or impose conditions on the future use thereof to prevent such violation."

Apparently plaintiffs would contend that even in the absence of such a statute they would be entitled to notice and hearing under the due process clause of the Fourteenth Amendment of the Constitution of the United States and Article I, Sections 10 and 18 of the Oregon Constitution.

We shall first consider plaintiffs' contention that ORS 537.720 is the controlling statute. This section provides for the cancellation of a permit or certificate only if there is a wilfull violation of the permit, certificate, or certain provisions of the water code. However, this is not the only statute providing for the cancellation of a permit. ORS 537.260 (1) provides as follows:

"Whenever the time within which any appropriation under a permit should have been perfected has expired and the owner of the permit fails or refuses within three months thereafter to submit to the State Engineer proof of completion of the appropriation as required by ORS 537.230 and 537.250, the State Engineer may, after 60 days' notice by registered mail, order the cancellation of the permit. The cancellation shall have the same force and effect as cancellation of a permit in the proceedings provided for in ORS 537.410 and 537.450."

Plaintiffs argue that ORS 537.260 (1) is applicable only to a case where a permit is issued but no beneficial use of the water has yet been made under the permit; at this stage the right is *inchoate* only. They contend that immediately upon the application of the water to a beneficial use the right becomes *vested* and at this stage ORS 537.260 (1) does not apply, and ORS 537.720 becomes applicable.

██ The trial court held that the permit was inchoate and not vested until the permittee fully complied with all of the statutory specifications. We agree with this interpretation of the water code. It seems clear to us that the legislative assembly intended the water right certificate, not the permit, even when followed by a beneficial use, to mark the point at which a water right becomes vested. Prior to the water code of 1909 the appropriation of water in Oregon was recognized as a method of creating a vested interest in the waters of a stream. But the adoption of the water code introduced a new concept of establishing one's right to water. All waters in Oregon were declared to belong to the public subject to existing rights (ORS 537.110) and although such waters were declared to be subject to appropriation, they were appropriable only "as provided in the Water Rights Act and not otherwise * * *." (ORS 537.120.) Appropriation alone was no longer enough to establish a vested right in the waters of the state; the water code required, and still requires, the fulfillment of other conditions before a water right will vest in the appropriator. Various sections of the water code make this clear. The plan of the statute is to recognize vested rights in water not simply where there is an appropriation but when the "appropriation has been perfected." Thus ORS 537.250 provides that a water right certificate shall

be issued upon it appearing to the satisfaction of the State Engineer "that an appropriation *has been perfected in accordance with the provisions of* the *Water Rights Act.*" (Emphasis added.) ORS 537.630, which puts a time limit on the beginning and completion of construction of a well, is to the same effect providing that "upon receipt of proof satisfactory to the State Engineer that an appropriation *has been perfected in accordance with the provisions of ORS 537.505 to 537.795* he shall issue a ground water right certificate * * *." (Emphasis added.)[4] If the requirements for the perfection of an appropriation are not met the State Engineer may cancel the permit, and it is to be noted that ORS 537.630 (4) provides that "the procedure for cancellation of a permit shall be as provided in ORS 537.260" and not, as plaintiffs contend, under the procedure set out in ORS 537.720.

Plaintiffs argue that the notice sent to Redwine which was returned to the State Engineer undelivered and unopened did not constitute reasonable notice to plaintiffs and therefore did not fulfill the constitutional requirement of procedural due process.

■ The notice was sent to the permittee at the address given to the State Engineer by Redwine. It is contended that upon the return of the letter with the notation that it was "unclaimed," the State Engineer should have made further effort to give notice of the proposed cancellation. The contention is without

---

[4] An appropriation is not perfected unless there is compliance with ORS 537.630, which provides that:

"* * * [T]he permit holder shall file a certificate of such completion with the State Engineer, disclosing the depth of the water table; the depth, diameter and type of each well, and the kind and amount of the casing; the capacity of the well pump in gallons per minute and the drawdown thereof; and such other information as the State Engineer deems necessary."

merit. Whether under some circumstances something more than the mailing of notice may be required of an administrative office to effect adequate notice we need not now decide. Here, plaintiffs failed to receive the notice as a consequence of their own neglect. The applicant for a water right is charged with knowledge of the requirements imposed by the statutes in perfecting a water right. It is applicant's duty not the State Engineer's to see that these requirements have been fulfilled. ORS 537.635 provides that a permit issued by the State Engineer may be assigned "but no such assignment shall be binding, except upon the parties thereto, unless filed for record in the office of the State Engineer." Plaintiff did not record the assignment to them of the permit from Redwine. If they had recorded the assignment the State Engineer would have sent the notice to them rather than to Redwine. They cannot now complain of a lack of notice resulting from their own dereliction.

■ Finally, it is argued that the State Engineer is estopped to claim that "he never received notice of Redwine's appropriation of the water pursuant to the permit, when he had knowledge the water was actually appropriated to a beneficial use" and he "led the plaintiffs to believe the appropriation of the water was lawful." Plaintiffs base the alleged estoppel on the fact that members of the State Engineer's staff measured the water levels in the well in question and reported to the State Engineer's office information as to the water table, the type of pump, the dates the well was being pumped. The inspection plaintiffs describe was a part of a study made by the ground water investigation section of the State Engineer's office to determine ground water characteristics. Plaintiff's well was one of approximately 800 wells throughout

the state. We are unable to see how an estoppel can be created out of such circumstances. It may not have been unreasonable for plaintiffs to assume that the inspection of their well meant that their permit was in good standing. But the inspection of the well was a part of a general study of the ground water supply in Oregon and cannot be regarded as a representation upon which to predicate an estoppel.

The decree of the trial court is affirmed.[9]

---

[9] For a case closely in point, see Mosby Irrigation Company v. Criddle, 11 Utah2d 41, 354 P2d 848 (1960).