Argued and submitted May 20, affirmed July 8, reconsideration denied October 7, petition for review denied November 24, 1992 (314 Or 727)

# LANE ELECTRIC COOPERATIVE, INC.,
*Respondent,*

*v.*

# FEDERATED RURAL ELECTRIC
# INSURANCE CORPORATION
*Appellant.*

(16-90-00928; CA A70367)

834 P2d 502

William E. Flinn, Eugene, argued the cause for appellant. With him on the briefs were John R. Osburn and William E. Flinn Associates, Eugene.

Charles N. Fadeley, Eugene, argued the cause for respondent. With him on the brief was Jensen, Fadeley & Elmore, Eugene.

Before Riggs, Presiding Judge, and Edmonds and De Muniz, Judges.

EDMONDS, J.

## EDMONDS, J.

This is an action on an insurance policy in which plaintiff alleges that defendant, its insurer, breached its obligation to provide coverage for plaintiff's pollution clean-up costs. The trial court granted judgment for plaintiff, and defendant appeals. We affirm.

In 1952, plaintiff purchased and occupied a parcel of land in Eugene. Thereafter, it installed two underground storage tanks, one of which was used to store gasoline. Plaintiff sold the property to another party in 1986 but continued to occupy it as a lessee until 1988. In 1988, it removed the tanks from the property and discovered a leak in the gasoline tank. An inspection by an engineer revealed that fuel had entered the ground water.[1] Plaintiff incurred clean-up costs because of the contamination and sought coverage under its policy with defendant for those expenses. In a trial to the court, the court made findings of fact and conclusion of law and entered judgment in plaintiff's favor.

The policy provides, in part:

"[Defendant] will pay on behalf of the policyholder all sums, * * * which the policyholder shall become legally obligated to pay as damages because of * * * property damage, to which this insurance applies, caused by an occurrence. * * *

"D. EXCLUSIONS

"This insurance does not apply:

"* * * * *

"4. To damage to property owned, used or otherwise in the physical control of an insured * * *.

## "DEFINITIONS APPLYING TO THIS POLICY

"* * * * *

---

[1] Ground water is defined as

"any water, except capillary moisture, beneath the land surface or beneath the bed of any stream, lake reservoir or other body of surface water within the boundaries of this state, whatever may be the geological formation or structure in which such water stands, flows, percolates or otherwise moves." ORS 537.515(4).

The inspection revealed that the tank pit was approximately 16 feet deep and that, between 1988 and 1989, the water table varied from 15 to 14 feet below the surface.

**"Occurrence** - An accident occurring within the policy period, including continuous or repeated exposure to conditions, which results in Personal Injury or Property Damage neither expected or [sic] intended from the standpoint of the insured.

"* * * * *

**"Property damage** - Physical injury to or destruction of tangible property including loss of use thereof * * *."[2] (Boldface in original.)

■ Defendant makes three assignments of error. First, it argues that an "occurrence" under the policy did not happen. It asserts that the trial court erred in finding that the leak was accidental and neither expected nor intended by plaintiff. Because those findings are equivalent to a jury verdict, we are not at liberty to overturn them if they are supported by any evidence. ORCP 62F; ORS 19.125; *Aetna Casualty and Surety Co. v. Brathwaite*, 90 Or App 109, 117, 751 P2d 237, *rev den* 305 Or 672 (1988).

The policy defines an "occurrence" as an "accident" that results in either personal injury or property damage that is "neither expected nor intended *from the standpoint of the insured.*" (Emphasis supplied.) Defendant asserts that whether plaintiff "expected" the damage requires a determination of whether it knew or should have known that damage was likely to occur. *See Albertson's Inc. v. Great Southwest Fire Ins. Co.*, 83 Or App 527, 531, 732 P2d 916, *rev den* 303 Or 332 (1987). The parties stipulated that plaintiff had no actual knowledge of the leak. Defendant argues that plaintiff should have known of the damage, because the tank had been in the ground more than 30 years when the leak was discovered and because underground fuel tanks generally have a life expectancy of approximately 15 years.

Plaintiff refers us to this testimony:

"Q. Can you estimate the life expectancy of a metal [tank] in general, holding gasoline?

"* * * * *

"A. Gross estimate, 15 years, but it can range significantly from that.

---

[2] The policy also contains a pollution exclusion, but none of the parties' arguments on appeal is predicated on that exclusion.

"Q. Higher and lower?

"A. Uh-huh.

"Q. What are the factors that are involved in that range?

"A. Whether the groundwater intercepts the tank, rainfall, soil materials the tank is in contact with, stray electrical currents. There's a number of things that can affect the life · expectancy of metal."

The witness also testified that nothing at the site led him to believe that plaintiff could have detected the leak before the tank was removed. Further, a Department of Environmental Quality official testified that he had observed properly-installed tanks in perfect condition after 20 to 30 years of in-ground service. In the light of that testimony, there is evidence to support the trial court's finding that the damage caused by the leak was not expected by plaintiff.

 Defendant next assigns error to the trial court's conclusion that plaintiff's clean-up costs were "property damages." It argues that the contamination of the ground water surrounding the tank was not physical injury to tangible property within the meaning of the policy.[3] Interpretation of unambiguous language in an insurance policy is a question of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). A policy is to be construed according to its character, its purpose and the meaning that the insured would suppose it to have. *Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 551 P2d 478 (1976). Its language is to be given a plain and ordinary meaning. *Mortgage Bancorp v. New Hampshire Ins. Co.*, 67 Or App 261, 677 P2d 726, *rev den* 297 Or 339 (1984). Ground water is tangible property. When it is contaminated, its quality is injured

---

[3] When the issue of whether clean-up costs to remedy a release of hazardous substances into the environment has been addressed in other jurisdictions, there has been a split of authority. Some jurisdictions hold that clean-up expenses are "equitable in nature" and not "damages" within the policy language, because equity does not award damages. *See, e.g., Continental Insurance Companies v. Northeastern Pharmaceutical and Chemical Co., Inc.*, 842 F2d 977 (8th Cir 1988), *cert den* 488 US 821 (1988); *Mraz v. Canadian Universal Insurance Co.*, 804 F2d 1325 (4th Cir 1986). Other jurisdictions hold that environmental clean-up expenses are compensatory damages for injury to property, even though a claim arising from the costs may be characterized as seeking equitable relief. *See, e.g. Port of Portland v. Water Quality Ins. Syndicate*, 796 F2d 1188 (9th Cir 1986); *Boeing Co. v. Aetna Cas. and Sur. Co.*, 113 Wash 2d 869, 784 P2d 507 (1990).

physically and is "damaged." We hold that, under the plain meaning of defendant's policy, the contamination of ground water was "property damage."

■ Finally, defendant assigns error to the trial court's finding that the ground water was not in plaintiff's control. The policy excludes damage to property "owned, used or otherwise in the physical control of the insured." All water within this state, which necessarily includes ground water, belongs to the public. *See* ORS 537.110; *Green v. Wheeler*, 254 Or 424, 458 P2d 938 (1969), *cert den* 397 US 990 (1970). Additionally, the right to control ground water belongs to the public. ORS 537.525(1). Although ground water is subject to appropriation,[4] there is no evidence that plaintiff or anyone else made any attempt, lawful or otherwise, to appropriate the ground water. Therefore, there is evidence to support the trial court's finding that plaintiff did not own, use or otherwise control the contaminated ground water.

Affirmed.

---

[4] *See* ORS chapter 537, specifically, the Ground Water Act, ORS 537.505 to ORS 537.795.