Argued and submitted January 13, reversed and remanded July 28, respondent's petition for reconsideration filed September 1, allowed by opinion October 6, 1993
See 123 Or App 536, 858 P2d 1361 (1993)

NORTH PACIFIC INSURANCE COMPANY,
an Oregon corporation,
*Respondent,*

*v.*

UNITED CHROME PRODUCTS, INC.,
an Oregon corporation,
Lyman Larabee, individually
and dba United Saw Service,
Marjorie Marsh, Raymond L. Marsh,
Frances L. Marsh, Christopher L. Marsh,
Lafran, Inc., and Lee R. Marsh, individually
and dba United Saw Service,
Vernetta E. Larabee, Sidney B. Lewis, Jr.,
and Richard Morseth,
*Defendants,*

CITY OF CORVALLIS,
*Appellant.*

(C 89-0777; CA A72430)

857 P2d 158

Thomas H. Tongue and John C. Cahalan, Portland, argued the cause for appellant. With them on the briefs were Michael J. Francis and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Michael A. Lehner, Portland, argued the cause for respondent. With him on the brief was Lehner, Mitchell & Rodrigues, Portland.

Jeffrey V. Hill, Bradford H. Lamb, and Zarosinski & Hill, Portland, filed a brief *amicus curiae* for Transamerica Insurance Company.

I. Franklin Hunsaker, Douglas G. Houser and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, filed a brief *amicus curiae* for Insurance Environmental Litigation Association.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

### RIGGS, J.

The City of Corvallis (city) appeals from a summary judgment in plaintiff insurer's favor. We reverse.

United Chrome Products, Inc. (insured) leased a site from city, where it operated a chrome plating facility from the late 1950's to November 10, 1984. During the course of its chrome plating operations, the insured deposited chrome in a dry well and plating tanks on the property. The chrome contaminated the ground water. The highest concentrations of contamination were detected in the ground water immediately beneath the insured's building, especially in the area beneath the large subfloor plating tanks.

In 1983, the United States Environmental Protection Agency (EPA) listed the site on the national priorities list under the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA). In December, 1983, the EPA advised insured and city that they were "potentially responsible parties." In 1987, EPA notified city that it was responsible for cleaning up the ground water contamination and for reimbursement of EPA's expenses of $4.5 million. In January, 1989, city notified North Pacific Insurance Company (plaintiff) and insured of the damage by filing a complaint for indemnity.

■ Plaintiff brought this declaratory judgment action to determine whether its insurance policies cover the cost of environmental cleanup at the site owned by city[1] and leased by insured. Plaintiff moved for summary judgment, which the trial court granted.[2] City appeals.[3]

---

[1] City was allowed to intervene in this case, which is the only active remaining defendant. It has also received an assignment of rights from the other defendants, including United Chrome, in a settlement of another lawsuit.

[2] The trial court granted partial summary judgment for plaintiff on the basis of the "pollution exclusion" clause:

"The Court will grant Plaintiff's motion for summary judgment as to any contamination resulting from seepage from the dry well, emissions from the building vents, gradual leakage from the building's containment system, and sloppy or negligent business operations. Both parties motions will be denied as to the specific incidents contended by the [defendant]. There are material issues of fact to be resolved as to whether or not these incidents qualify as being 'sudden and accidental'."

It also ruled that defendant provided late notice of damage and that plaintiff was prejudiced:

City first assigns error to the summary judgment on plaintiff's claim that city gave late notice of damage.[4] If the insured, *e.g.*, city, fails to give immediate notice, the question becomes whether the insurer was prejudiced by late notice. Plaintiff has the burden to show prejudice. *Halsey v. Fireman's Fund Ins. Co.*, 68 Or App 349, 354, 681 P2d 168, *rev den* 297 Or 601 (1984). The two part inquiry is: (1) whether the notice was received in time for the insurer to make a reasonable investigation and adequately protect its interest and that of the insured; and (2) if the insurer could not adequately investigate, whether the insured acted reasonably in failing to give notice at an earlier time. *Lusch v. Aetna Cas. & Surety Co.*, 272 Or 593, 599, 538 P2d 902 (1975). An insurer is not necessarily prejudiced as a matter of law just because it receives notice by complaint or after a claim has been settled or tried. *See Halsey v. Fireman's Fund Ins. Co., supra*, 68 Or App at 353.

Under the first inquiry, plaintiff claims prejudice because it received notice of damage in 1989 when city filed a complaint for indemnity. The notification by complaint, by itself, is not prejudicial. However, it could be prejudicial if plaintiff could not conduct a reasonable investigation at the time of notice. Plaintiff claims it could not conduct an investigation. It is unclear whether plaintiff could reasonably have conducted an investigation in 1989 because the exact dates of dismantling of buildings or specific areas of cleanup are unknown.

---

"The impossibility of determining at this time what damage resulted from the 'sudden and accidental' instances and what damage resulted from excluded types of polluting events establishes the prejudice to the Plaintiff."

It further ruled that the ground water was property within the "care, custody, and control" of the insured.

[3] In its reply brief, plaintiff alleges for the first time that defendant has no standing. This question was not preserved below and will not be considered here. *Adair v. McAtee*, 236 Or 391, 393, 385 P2d 621 (1963).

[4] North Pacific's policies contained the following notice condition:

"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."

■■ Plaintiff also argues that "the prejudice is obvious" because it did not know when the ground water was actually polluted. There were several different policies in effect over the years with different damage liability limits.[5] Without an exact date of damage, plaintiff claims that it does not know which policy to apply. City argues that the dates of the specific instances of "sudden and accidental" pollution can be narrowed down to certain years, which would give plaintiff enough information to identify the appropriate policies. In a summary judgment proceeding, the moving party has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978). On this record, there are material issues of fact whether prejudice exists.

■ Given our holding regarding plaintiff's claims of prejudice, we do not reach the second inquiry of whether city acted reasonably in failing to give notice at an earlier time. If the finder of fact determines that plaintiff suffered no prejudice, plaintiff is bound to fulfill its policy obligations, even if city acted unreasonably. *Halsey v. Fireman's Fund Ins. Co., supra*, 68 Or App at 354.

■ City asserts in its second assignment of error that the trial court erred in ruling that insured controlled the ground water. Plaintiff argues that the ground water was controlled by insured, and, thus, was not covered by its policy.[6] We held in *Lane Electric Coop. v. Federated Rural Electric*, 114 Or App 156, 834 P2d 502, *rev den* 314 Or 727 (1992), that ground water contaminated by gasoline in an underground storage tank was not within the insured's control for purposes of an exclusion to a liability policy for property owned, used, or otherwise in the physical control of the insured. We reasoned:

---

[5] In April, 1985, the insured increased its coverage for property damage liability from $10,000 per occurrence to $100,000. In April, 1977, it purchased its first umbrella policy, which added another $100,000 of coverage for property damage liability.

[6] The insurance policies exclude from coverage:

"(1) Property owned by the insured, (2) property occupied by or rented to the insured, (3) property used by the insured, (4) property in the *care, custody or control* of the insured or as to which the insured is for any purpose exercising physical control." (Emphasis supplied.)

"All water within the state of Oregon, which necessarily includes ground water, belongs to the public. *See* ORS 537.110; *Green v. Wheeler*, 254 Or 424, 458 P2d 938 (1969), *cert den* 391 US 990 (1970). Additionally, the right to control ground water belongs to the public. ORS 537.525(1). Although ground water is subject to appropriation, there is no evidence that plaintiff or anyone else made any attempt, lawful or otherwise, to appropriate the ground water." 114 Or App at 161.[7]

This case is substantially the same. There is no evidence that insured appropriated or otherwise controlled the ground water that was contaminated. Therefore, the trial court erred in ruling that the ground water was in the control of insured.

■      City's final two assignments of error concern the "pollution exclusion" clause in the insurance policy, specifically the term "sudden and accidental."[8] We have discussed the "pollution exclusion" clause on three other occasions.[9] In *Transamerica v. Sunnes*, 77 Or App 136, 140, 711 P2d 212 (1985), *rev den* 301 Or 76 (1986), we held that the pollution exclusion clause applied when the defendant discharged waste materials regularly over a period of many years and the discharge was not "sudden and accidental."

Plaintiff claims that city intentionally discharged materials over a period of years through sloppy and negligent business operations, emissions from the building vents, and gradual leakage from the dry well. City claims expert analysis shows that the main concentration of contamination in the

---

[7] *See* ORS 537.505 to ORS 537.795.

[8] The pollution exclusion clause states:

"This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply* if such discharge, dispersal, release, or escape is *sudden and accidental*." (Emphasis supplied.)

[9] *A-1 Sandblasting and Steamcleaning v. Baiden*, 53 Or App 890, 632 P2d 1377 (1981), *aff'd* 293 Or 17, 643 P2d 1260 (1982), found the exclusion partially ambiguous because it was unclear whether paint over-spray was a pollutant. The case did not discuss the term "sudden and accidental." In *Mays v. Transamerica Ins. Co.*, 103 Or App 578, 799 P2d 653 (1990), *rev den* 311 Or 150 (1991), we discussed whether the "pollution exclusion" clause was ambiguous because it appeared to cover a continuous discharge as an "occurrence" but excluded continuous discharge under the "pollution exclusion" section. We ruled that the clause was not ambiguous.

ground water is immediately beneath the plating tanks due to three or more "sudden and accidental" incidents. A jury could draw different conclusions from the facts presented. *Seeborg v. General Motors Corporation, supra*, 284 Or at 700. Reviewing the record in the light most favorable to city, we find that genuine issues of material fact exist as to whether the "pollution exclusion" clause applies. 284 Or at 699; *Stanfield v. Laccoarce*, 288 Or 659, 665, 607 P2d 177 (1980).

Reversed and remanded.