Argued and submitted April 17, affirmed June 19, 1996

Robert W. CARL;
Shirley Carl; Guy Carr;
First Interstate Bank of Oregon N.A.,
as Trustee of the Mildred Carr Trust;
Tom Edwards; Dorothy Edwards;
Carr Building Corporation,
an Oregon corporation;
Carr Chevrolet Co., Inc.,
an Oregon corporation,
*Appellants,*

*v.*

OREGON AUTOMOBILE INSURANCE
COMPANY/NORTH PACIFIC INSURANCE COMPANY;
Providence Washington Insurance Company;
Safeco Insurance Company of America,
*Respondents,*

*and*

FIREMAN'S FUND INSURANCE COMPANY,
*Defendant.*

(C931146CV; CA A87268)

918 P2d 861

William H. Walters argued the cause for appellants. With him on the briefs were Jerry B. Hodson, Steven F. Hill and Miller, Nash, Wiener, Hager & Carlsen.

I. Franklin Hunsaker, III, argued the cause for respondents Providence Washington Insurance Company. Michael A. Lehner argued the cause for respondents Oregon Automobile Insurance Company/North Pacific Insurance Company. Thomas A. Gordon argued the cause for respondent Safeco Insurance Company of America. With them on the brief were Ronald E. Bailey, Beth Skillern and Bullivant, Houser, Bailey, Pendergrass & Hoffman; Lehner, Mitchell, Rodrigues & Sears; and Angela M. Stewart and Gordon & Polscer.

Steven J. Dolmanisth and Anderson, Kill, Olick & Oshinsky filed an *amicus curiae* brief for Reynolds Metals Company.

Bradford H. Lamb filed an amended *amicus curiae* brief for Aetna Casualty and Surety Company.

Frank V. Langfitt III and Ater Wynne Hewitt Dodson & Skerritt filed an amended *amicus curiae* brief for Insurance Environmental Litigation Association.

Before Richardson, Chief Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Plaintiffs appeal from a judgment entered after the trial court granted defendants' motions for summary judgment. Because we conclude that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law, ORCP 47 C, we affirm.

Plaintiffs brought this action against several defendant insurance companies[1] to recover cleanup costs for environmental contamination resulting from a leaking underground storage tank (tank) located at an automobile dealership that plaintiffs owned and operated from 1956 to 1987. Three tanks were installed at the dealership in 1950.[2] When the tanks were decommissioned and removed in October 1989, plaintiffs discovered that one of the tanks had a pencil-sized hole in it about one-third of the way down from the top, that gasoline had been discharged and that the site and subjacent groundwater were contaminated. Plaintiffs' subcontractor, Fullman, supervised the excavation of approximately 280 cubic yards of contaminated soil that was removed and disposed of at a county landfill. In addition, 884 cubic yards of contaminated soil were spread over the dealership's parking lot to reduce hydrocarbon levels through an aeration process.

Within a few days of their removal on October 5 and 6, the tanks and fuel lines were shipped to a company that dismantled and sold them. Fullman took various water and soil samples, which he had tested by Pacific Analytical Laboratories. A representative of the Oregon Department of Environmental Quality, the fire marshall and an environmental consultant visited and observed the site. Photographs

---

[1] Plaintiffs allege the following periods of coverage for each defendant: Oregon Automobile Insurance Company/North Pacific Insurance Company (Oregon Auto) from 1957 to the late 1970s; Safeco Insurance Company (Safeco), 1980-81; and Providence Washington Insurance Company (Providence), 1983-85. Defendants dispute those dates. Defendant Fireman's Fund Insurance Company was dismissed from the case pursuant to a settlement agreement in a judgment entered March 18, 1994.

[2] Although plaintiffs' and defendants' briefs refer to only two tanks, the summary judgment record indicates that there were three tanks installed in 1950 and removed in October 1989. Two were used for gasoline storage, the third for waste oil.

were taken of the tanks and of the site and Fullman made an audio tape recording chronicling the removal process. On October 18, plaintiffs discontinued the excavation and the site was backfilled.

Fullman stated in an affidavit that the pencil-sized hole was the likely source of the soil contamination. The record also indicates that an expert would testify for plaintiffs that the tank wall probably was breached in the late 1960s or early 1970s, but no later than 1974 and that, subsequently, each time the tank was refilled (approximately every two weeks), a discharge occurred and continued until the level of gasoline in the tank dropped below the hole.

In October 1990, approximately one year after they had discovered the contamination, removed and disposed of the tanks and removed the contaminated soil, plaintiffs notified defendants Providence and Oregon Auto of a possible claim. Plaintiffs notified defendant Safeco of a possible claim in December 1992, when one of the other insurers brought to plaintiffs' attention the possibility of Safeco coverage.

Each of defendants' liability policies with plaintiffs contained the following condition:

"You must promptly notify us or our agent of any accident or loss. You must tell us how, when and where the accident and loss happened."

Based in part on this policy provision, all three defendants refused to reimburse plaintiffs for the cost of investigating and cleaning up the environmental contamination, which plaintiffs estimated to be about $100,000 as of August 1990. Plaintiffs then brought this action to recover those costs. The trial court granted defendants' motions for summary judgment on the ground that plaintiffs' notice was late, prejudicial and unexcused. It reasoned:

"It is clear that the insurance compan[ies] * * * were prejudiced. There is no question about that. To suggest that an expert in ground water and some pictures and some narrative testimony is all that's needed is just incorrect. They need - obviously, the more information they can get the better they are. And so there is some way to investigate by

using experts and people who come from the insured and not the insurer."

Plaintiffs assign error to that ruling. They argue that there are genuine issues of material fact about whether the delayed notice was prejudicial and whether plaintiffs acted reasonably in not giving earlier notice. They contend that defendants provided no evidence of actual prejudice resulting from the late notice. Defendants respond that plaintiffs, without excuse, failed to provide timely notice of their claim as required by the insurance policies, and that defendants were prejudiced by plaintiffs' destruction of the tanks and the removal of the contaminated soil, because those acts made it impossible for defendants to conduct any meaningful investigation.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C. The determination of whether there is a genuine issue of material fact is made on the evidence submitted by both parties. *Jones v. General Motors Corp.*, 139 Or App 244, 256, 911 P2d 1243 (1996). We review the record in the light most favorable to the nonmoving party, here, plaintiffs. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). Defendants, who have the burden of persuasion at trial, must make a *prima facie* showing that they are entitled to summary judgment, using credible evidence that would entitle them to a directed verdict if uncontroverted at trial. *Jones*, 139 Or App at 253-54 (citing with approval *Celotex Corp. v. Catrett*, 477 US 317, 330-31, 106 S Ct 2548, 91 L Ed 2d 265 (1986) (Brennan, J., dissenting)). If defendants satisfy that burden of production, the burden shifts to plaintiffs, who must produce evidentiary materials that include specific facts showing there is a genuine issue for trial. *Id.* at 252-53 (citing *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 US 574, 586-87, 106 S Ct 1348, 89 L Ed 2d 538 (1986)).

In this case, the first issue is the significance of plaintiffs' late notice. If an insured fails to give immediate notice to its insurer of a possible claim, the viability of the insurer's policy obligation turns on a two-part inquiry: (1) whether the insurer has been prejudiced by that late

notice because notice was not received in time for the insurer to make a reasonable investigation and adequately to protect its interest and that of the insured; and (2) if the insurer was prejudiced because it could not adequately investigate, whether the insured acted reasonably in failing to give notice at an earlier time. *Lusch v. Aetna Cas. & Surety Co.*, 272 Or 593, 597-600, 538 P2d 902 (1975), *North Pacific Ins. Co. v. United Chrome Products*, 122 Or App 77, 81, 857 P2d 158, *mod* 123 Or App 536, *rev den* 318 Or 171 (1993). The insurer has the burden of showing prejudice. *Halsey v. Fireman's Fund Ins. Co.*, 68 Or App 349, 354, 681 P2d 168, *rev den* 297 Or 601 (1984).

■    It is uncontested that plaintiffs removed the tanks and fuel lines on October 5 and 6, 1989. A few days later, plaintiffs transported the tanks and fuel lines to another location, where they were dismantled and sold. Within 14 days of decommissioning and removing the tanks, plaintiffs removed several hundred cubic yards of soil, spread out several hundred more yards for aeration and backfilled the site. Carter, a senior claims supervisor for one of the defendants, stated in an affidavit that by the time the claim was first reported, all physical evidence of the conditions that might have caused or contributed to the contamination had been destroyed or altered to such an extent that it was impossible for defendants to conduct an investigation. Defendants met their initial burden of establishing the nonexistence of a genuine issue of material fact with respect to their ability to investigate. *Jones*, 139 Or App at 254.

Because defendants met their initial burden, plaintiffs had the burden of producing evidence to demonstrate a genuine factual issue for trial regarding defendants' ability to conduct a meaningful investigation. *Id.* at 255. Plaintiffs offered information from the following sources: witnesses present at the time of the excavation; test results from the water and soil samples; photographs of the tanks and the site; and Fullman's audio tape transcript of the removal process. Viewed in the light most favorable to plaintiffs, there is no evidence in the record that witnesses to the excavation had any interest in determining the precise condition of the tanks or the lines. The transcript and photographs indicate

that the persons responsible for the removal, decommissioning, and soil and water testing were concerned only with the present condition of the site and had no interest in determining when the contamination began or at what rate it progressed. Because the test results are not part of the summary judgment record, we do not know if they provide information that would be relevant to defendants' investigation. Likewise, the photographs of the damaged tank show only the size of the hole, which is undisputed, and contribute nothing to a meaningful investigation by defendants. The transcript of the removal process makes no mention of when the contamination might have started or how far it had spread throughout the site by the time it was discovered. In short, none of the information offered by plaintiffs would allow defendants to determine what caused the hole in the tank, or whether the hole was the sole source of the contamination. Neither does that information allow defendants to investigate possible third party claims. Plaintiffs have not met their burden of creating a genuine issue of material fact with respect to defendants' ability to investigate.

Nonetheless, plaintiffs argue that defendants have not met their burden, because, under *Halsey* and *United Chrome Products*, "mere passage of time does not constitute prejudice" and defendants must establish actual prejudice by showing what they would have done if they had received timely notice. In our view, plaintiffs' reliance on those two cases is misplaced.

In *Halsey*, the insured did not notify its insurer of its claim until after the conclusion of the trial on the underlying claim against the insured. The insured's affidavits and a letter from the insurer showed that the insurer might have denied coverage even if notice had been given before trial, and that, even if the insurer had been notified before trial, there was no evidence that it might have achieved a better result. *Halsey*, 68 Or App at 353. We reversed the trial court's grant of summary judgment for the insurer, noting that the insurer's affidavits showed no prejudice from late notice. *Id.* Defendants in this case, by contrast, have shown actual prejudice resulting from plaintiffs' late notice.

In *United Chrome Products*, the insured operated a chrome plating facility from the late 1950s to November 1984 on a site leased from the City of Corvallis. 122 Or App at 80. In 1987, the United States Environmental Protection Agency (EPA) notified the city that it was responsible for cleaning up ground water contamination in the site area and for reimbursement of the EPA's expenses. The city did not notify the insured and the insurer until 1989, when it filed a complaint for indemnity. In a declaratory judgment action brought by the insurer, the trial court entered summary judgment against the insured and the city, as assignee of the insured's rights, based on the insurer's claim that the city gave late notice. *Id.* The insurer had argued that it was prejudiced by the late notice as a matter of law, because it could not conduct a reasonable investigation and, because it did not know when the ground water had been polluted, it could not determine which of several insurance policies to apply. *Id.* at 81-82. With respect to the insurer's ability to investigate, we observed:

> "It is unclear whether [the insurance company] could reasonably have conducted an investigation in 1989 because the exact dates of dismantling of buildings or specific areas of cleanup are unknown." *Id.* at 81.

Additionally, there was evidence that the dates of the specific instances of pollution could be narrowed down to certain years, allowing for identification of the appropriate policies. *Id.* at 82. On that record, we reversed the grant of summary judgment, holding that there were genuine issues of material fact as to whether prejudice existed. *Id.*

In this case, by contrast, there is no uncertainty about when the site was dismantled. The tanks and fuel lines were removed, dismantled and sold at least one year before any of the defendants had an opportunity to investigate. Even if, as plaintiffs contend, the remediation process is ongoing, by the time plaintiffs notified defendants of possible claims, plaintiffs had removed more than 1100 cubic yards of contaminated soil from the pollution site and had backfilled the excavation. We have already described the prejudicial effect of those events. Notwithstanding plaintiffs' expert's theory, plaintiffs' removal and dispersal of the soil has made

it impossible to determine which of the several relatively short-duration insurance policies was in effect at critical times and the apportionment of liability, if any, to each defendant.

Finally, plaintiffs contend that defendants were not prejudiced by late notice, because even if plaintiffs had provided defendants with timely notice, defendants would have rejected the claim without conducting an investigation. According to plaintiffs, defendants would have declared that the contamination was not the result of a "sudden and accidental" discharge and hence was not a covered event. Plaintiffs' reliance on *Halsey* in support of this argument is also misplaced.

On the facts presented in *Halsey*, we observed that late notice might not have prejudiced the insurer, because the insurer's denial letter indicated that it might have denied the claim even if it had been given an opportunity to investigate. 68 Or App at 353. However, we did not hold that if an insurance company offers reasons other than late notice as a justification for denying coverage, a court is precluded from finding prejudice as a matter of law based on late notice. *See Port Services Co. v. General Ins. Co. of America*, 838 F Supp 1402, 1403 (D Or 1993) (*Halsey* does not stand for the rule that prejudice resulting from late notice cannot be found as a matter of law if it is offered as one among several reasons for denying coverage). Furthermore, plaintiffs' argument that defendants would have denied coverage regardless of when notice was given is wholly speculative. *Cf. Halsey*, 68 Or App at 353 (record included letter from insurer denying coverage on ground other than late notice).

■ Because we conclude that there is no genuine issue of material fact and that, as a matter of law, defendants were prejudiced by plaintiffs' late notice, we turn to whether plaintiffs acted reasonably when they failed to give defendants timely notice. *United Chrome Products*, 122 Or App at 82. According to the trial court, plaintiffs' delay was not reasonable as a matter of law:

"The reason given here for the delay is negligence. A, we didn't remember we had a policy. B, we apparently didn't go

back to try to reconstruct that to determine if we had insurance. C, we didn't go back through our check records there to see if we bought any insurance, or we paid any money to any insurance company or insurance agent, and we just didn't investigate to do that."

Plaintiffs contend that the trial court erred in not finding that there is an issue of material fact about whether they acted reasonably in failing to give notice at an earlier time. Defendants rely on the court's reasoning in *Port Services Co.* to support the trial court's ruling.

We agree with defendants that *Port Services Co.* is instructive and supports the trial court's ruling. In that case, the owner of property that was leased to the insured discovered in April 1990 that kerosene from the insured's business operations had contaminated the soil and demanded that the insured pay for the damage. The insured did not notify its insurer until July 1990. *Port Services Co.*, 838 F Supp at 1404. Applying Oregon law, the court ruled that the insurer was prejudiced as a matter of law when the insured removed and disposed of a tank from its premises before notifying the insurer of its claim. *Id.* at 1405. The court concluded that as soon as the insured knew of its claim and knew that evidence pertinent to the claim was in the process of being removed, "a delay of even a week would have been inexplicable [and a] delay until all evidence is accessible only by scouring the scrap yards is unreasonable as a matter of law." *Id.*

Plaintiffs attempt to distinguish *Port Services Co.*, because, unlike the insured in that case, plaintiffs here did not believe they had continuing coverage from old, expired policies. They argue that when remediation became more involved than originally anticipated, they contacted counsel who advised them to notify their former insurers. However, plaintiffs cannot rely on their own failure to keep themselves informed of their insurance coverage as justification for giving prejudicially late notice. Plaintiffs' late notice was not reasonable as a matter of law.

The trial court did not err in granting defendants' motions for summary judgment on the ground that the late

notice was prejudicial to defendants. In the light of this disposition, it is unnecessary to address plaintiffs' other assignments of error.

Affirmed.