Argued and submitted October 17, 1996, affirmed February 12, petition for review denied July 15, 1997 (325 Or 491)

Thomson MARTIN,
an individual,
*Appellant,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,
an Illinois corporation,
*Respondent,*

*and*

Douglas SAWYER,
*Defendant.*

(94-5817; CA A90371)

932 P2d 1207

Tracy Pool Reeve argued the cause and filed the briefs for appellant.

Lisa E. Lear argued the cause for respondent. With her on the brief were Dianne K. Dailey and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Frank V. Langfitt, III, and Ater, Wynne, Hewitt, Dodson & Skerritt and Laura A. Foggan, Robert B. Bell, Luis de la Torre and Wiley, Rein & Fielding, Washington D.C., filed an *amicus curiae* brief for Insurance Environmental Litigation Association.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff Thomson Martin (Martin) appeals the dismissal of his claim against defendant State Farm Fire and Casualty Company (State Farm) for breach of two insurance policies that State Farm had issued to him. Martin argues that the trial court erred in holding that neither policy required State Farm to defend him against claims made by third parties for the costs of remedying environmental contamination on property of which he had been a part owner.[1] We affirm.

The property in question (the property) is located in Clackamas County. From 1941 to 1981, it was used for a chicken farm. As part of their operations, the farmers stored petroleum products in underground storage tanks on the property. In June 1988, Martin and three others each inherited an undivided one-quarter interest in the property. In 1990, they sold the property to Feltman and Wilson, who sold it in 1991 to Sunridge Development Corporation, a company that they controlled. Feltman and Wilson thereafter discovered petroleum contamination on the property that dated from the property's use as a chicken farm. As required by the Department of Environmental Quality, they spent over $240,000 to remedy the contamination.

In 1993, Feltman, Wilson, and Sunridge sued Martin, his three co-owners, and others in Clackamas County to recover the costs of remediation (the underlying case). Martin tendered defense of the complaint to State Farm, which denied coverage. After settling the underlying case, he filed this action in Sherman County, seeking to recover both his expenses in defending the underlying case and the cost of the settlement.

In determining whether State Farm had a duty to defend Martin,[2] we look solely at the facts alleged in the complaint in the underlying case and at the terms of the

---

[1] Plaintiff also alleged breach of contract and negligence claims against defendant Douglas Sawyer, the insurance agent who procured the policies. The trial court entered a judgment under ORCP 67 B on the claim against State Farm and stayed the claims against Sawyer until the decision on this appeal.

[2] The duty to indemnify is independent of the duty to defend. *Ledford v. Gutoski*, 319 Or 397, 403, 877 P2d 80 (1994). Plaintiff does not argue on appeal that

insurance policies. If the facts alleged provide *any* basis under which the plaintiffs in the underlying case could, without amending the complaint, have established a claim that would be covered, State Farm had a duty to defend. *Ledford v. Gutoski*, 319 Or 397, 399-400, 877 P2d 80 (1994). The plaintiffs in the underlying case asserted seven claims against Martin: two claims for statutory strict liability, one for negligence *per se*, and separate claims for fraud, negligent misrepresentation, unjust enrichment, and declaratory judgment. The question is whether any of those claims might be covered under either policy.

The underlying plaintiffs alleged the following relevant facts in support of their claims. Martin owned an undivided interest in the property, which had previously been used as a chicken farm. As part of that use, the farmers had stored and used petroleum products on the property, with the result that

> "[d]uring and after the time that the Property was used to farm, process and distribute poultry, petroleum products spilled, leaked, escaped, discharged or otherwise were released at the Property and caused substantial contamination to the soils at the Property."

The plaintiffs then alleged that, while Martin and his co-owners owned the property, they knew that storage tanks used to store petroleum products existed at the property, that when they became owners of the property they knew or reasonably should have known of the releases of petroleum products, that while they were owners they gained actual knowledge of the storage tanks and of the releases, and that they concealed the releases and contamination by removing the tanks and "filling, grading or otherwise moving soil or other material on or about the Property." Finally, the plaintiffs alleged that, while Martin was a part owner, "petroleum products associated with the underground storage tanks and related equipment continued to release to and migrate in the soils at the Property" and that Martin had "a legal obligation to disclose to plaintiffs Feltman and Wilson the known contamination to

---

State Farm had a duty to indemnify him for the cost of the settlement if it did not have a duty to defend him in the underlying case. *See Northwest Pump v. American States Ins. Co.*, 144 Or App 222, 925 P2d 1241 (1996).

soils at the Property." The plaintiffs did not allege that the contamination had migrated or threatened to migrate to soils off the property or to groundwater under the property.

In the second claim, the underlying plaintiffs alleged that Martin was strictly liable under ORS 465.255 and ORS 465.325.[3] Those statutes make a person liable if the person either (1) is an owner at the time of the acts or omissions that resulted in a release of pollutants, or (2) knew or should have known of the releases at the time that the person subsequently became an owner, or (3) learned of the releases while the person was an owner and subsequently transferred ownership to another without disclosing that knowledge. ORS 465.255(1), (2), (3). The fourth claim is for strict liability under ORS 466.640, which makes an owner of or person having control over oil or hazardous material strictly liable for any spills. In the sixth claim the plaintiffs asserted a claim for negligence *per se* for violation of ORS 466.705 through ORS 466.835 and related administrative rules. Those statutes and rules impose liability on owners. ORS 466.765.

Martin alleges that State Farm was required to defend him from these claims under either of two liability policies, each of which was in effect at all relevant times. The first, the Farm policy, provided primary insurance and included a right to a defense of any lawsuit based on a covered claim. The second, the Umbrella policy, provided excess coverage and included a right to a defense of a covered claim if no other insurance policy would provide a defense for that claim. State Farm asserts that a number of policy provisions justify its denials of coverage. We describe below the provisions that are sufficient to resolve the issues on the second, fourth, and sixth claims. We discuss additional provisions that are relevant to other claims as part of our discussion of those claims.

The Farm policy covers claims made or actions brought "against **an insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence** * * *." (Boldface in original.) It

---

[3] Unless the context indicates otherwise, all references to statutes are to the versions in effect in September 1993, when the plaintiffs filed the complaint in the underlying action.

defines an "occurrence" as "an accident, including exposure to conditions, which results in" bodily injury or property damage and defines "property damage" as "physical damage to or destruction of tangible property * * *." The Farm policy excludes from coverage

> "**bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, migration, dispersal, spill, release or escape of pollutants:
>
> "(1)   at or from premises owned, rented or occupied by the named insured * * *." (Boldface in original.)

The definition of "pollutants" clearly includes the petroleum products described in the underlying complaint.

The Umbrella policy covers any loss for which the insured is legally obligated to pay damages and defines a "loss" as "an accident that results in **personal injury** or **property damage** during the policy period." (Boldface in original.) It defines "property damage" as "physical injury to or destruction of tangible property." However, it excludes from coverage property damage "to your own property."

In the second, fourth, and sixth claims, the underlying plaintiffs alleged that Martin was liable to them because he was an owner or operator[4] of the property and because of events that allegedly occurred before and during the period that he was an owner or operator. Without that allegation, the plaintiffs would not have had a claim. Under the applicable law, the plaintiffs' claims are not affected if Martin ceases to be an owner; his liability depends on his having once been an owner and on what he knew or should have known or what he did while he was an owner. Because Martin's liability arises from his ownership of the property, the pollution exclusion in the Farm policy and the owned property exclusion in the Umbrella policy justified State Farm's determination that it did not have an obligation to defend him from these claims.

The pollution exclusion in the Farm policy[5] expressly excludes coverage for property damage arising out of the

---

[4] Martin does not assert that the allegation that he was an operator affects the applicability of these policies or of any policy exclusions.

[5] State Farm refers to the pollution exclusion in the Farm policy as *the* "absolute pollution exclusion" and cites a number of court decisions applying what some of those courts describe as the "absolute pollution exclusion." Whether or not this

discharge or migration of pollutants at or from premises that Martin owned, rented or occupied. Martin asserts that it does not apply because much of the contamination occurred before he became an owner of the property. Thus, he says, the discharge or migration occurred at the property of others. At the least, he argues, the exclusion is ambiguous because it does not contain any reference to the time at which he was an owner of the property.

Martin relies on *To v. State Farm Mutual Ins.*, 319 Or 93, 873 P2d 1072 (1994), in which the issue was what evidence was legally required to corroborate an uninsured motorist claim for an accident with a "phantom vehicle." The applicable policy, following statutory provisions, required proof of the facts of the accident other than the testimony of an insured or a person with a claim under the policy. In *To,* one of those injured, who was not a named insured, released his claim under the policy; the question was whether his testimony after the release was sufficient to meet the corroboration requirement. After construing the statutes that were the basis for the policy provision, the Supreme Court held that whether the person testifying had a claim was determined as of the time of testifying, not as of the time of the accident. Thus, testimony from a person who had released any claim resulting from the accident was sufficient.

Based on *To*, Martin argues that the pollution exclusion in the Farm policy is ambiguous, because it is reasonable to construe it to refer only to pollution that occurred when he owned the property. He points out that, as in *To,* the relevant phrase in the policy "is not modified by any express temporal qualification." 319 Or at 99. The problem with Martin's argument is that his ownership of the land is the basis for the claims against him in the underlying case. The time of his ownership is part of the substantive law that creates liability; it is not, as in *To,* simply a question of when evidence is presented. In *To,* the disqualification terminated when the witness released his claim. In this case, the basis of Martin's

pollution exclusion is in fact absolute, and whether or not it is the same as the exclusions involved in other cases, is irrelevant to our decision. Our role is to determine the effect of *this* exclusion on *this* case, not to describe the effect of this or some other exclusion on some other case.

liability, his ownership, was unchanged when he ceased being an owner.

■ Because in this case the foundation of the underlying plaintiffs' claims, at all times, was that Martin had at one time been an owner of the property, the claims were based on the release of pollutants at or from premises that he owned. They thus came within the pollution exclusion. Martin's liability to the underlying plaintiffs was dependent on his having been an owner. He could not avoid liability by selling the property. The Farm policy, however, expressly excludes from coverage liability for property damage that arises from the discharge of pollutants from property that Martin owned. Because of the unavoidable linkage between Martin's ownership and his liability, State Farm had no duty to defend under the Farm policy.

■ We turn to whether the Umbrella policy provides coverage for the second, fourth, or sixth claims. State Farm argues that the exclusion for property damage "to your own property" justifies its denial of coverage on those claims. Martin argues first that, under the allegations of the underlying complaint, the plaintiffs could have introduced evidence of contamination to groundwater. Martin did not own the groundwater, and any contamination, thus, would not be to his own property. *Lane Electric Coop. v. Federated Rural Electric*, 114 Or App 156, 161, 834 P2d 502, *rev den* 314 Or 727 (1992); *see also St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 206-07, 209-10, 923 P2d 1200 (1996). However, the underlying plaintiffs did not allege any damage, or threat of damage, to groundwater. Rather, they alleged that the releases "caused substantial contamination *to the soils at the Property*" and that, while Martin was an owner, petroleum products "continued to release to and migrate in *the soils at the Property*." (Emphases supplied.) Nothing in the complaint would support evidence of damage or the threat of damage to anything other than the soils at the property. Although those allegations do not exclude the possibility that part of the purpose for the plaintiffs' remedial actions was to prevent groundwater contamination, failing to exclude a possibility of an event is not the same as affirmatively alleging that the event has occurred.

■ Martin next argues that the owned property exclusion does not apply because the plaintiffs sought damages to *their* property, not to Martin's. He points out that, if he sold a car to plaintiffs and they sued him for property damage arising from a subsequent accident, the fact that he had once owned the car would be irrelevant to State Farm's obligation to defend the claim. This argument ignores the connection between Martin's status as an owner and the plaintiffs' claims. In his example, the underlying plaintiffs' claims would not be connected to Martin's previous ownership of the car. In the actual case, the connection is essential to the claims.

Finally, Martin argues, relying on *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F3d 699 (7th Cir 1994), that his claim under the Umbrella policy was not for damage to his property but rather was for governmentally imposed liability. In *Patz*, a state environmental agency required the plaintiffs to clean up pollution that had occurred on the plaintiffs' property. The defendant denied coverage under a liability policy, in part based on an owned property exclusion. The Seventh Circuit held that the plaintiffs were not seeking to recover for damage to their own property:

> "[I]t is a policy of liability insurance, not casualty insurance, on which they have sued. They seek to recover the cost of complying with a government order to clean up a nuisance. The fact that the clean up occurred on their land is irrelevant. For all we know, the damage to the land was much less than the cost of cleaning it up." 15 F3d at 705.

*See also Anderson Development Co. v. Travelers Indem. Co.*, 49 F3d 1128, 1134 (6th Cir 1995) (following *Patz* under Michigan law); *Unigard Mut. Ins. Co. v. McCarty's, Inc.*, 756 F Supp 1366, 1369 (D Idaho 1988) (owned property exclusion does not prevent coverage for liability to third parties, such as governmental entities, caused by property damage to insured's property).

■ *Patz, Anderson Development*, and *Unigard* appear to be based more on general insurance concepts than on the words of the specific policies. *Patz* also appears to be based on

Judge Posner's patent concern for what he describes as relatively uneducated insureds who simply followed the recommendations of their consultants. It is not clear that these courts would extend their analyses to this case, in which Martin is not himself the subject of a governmental requirement to clean up the pollution but rather is liable to indemnify the current owners from the costs of complying with such a requirement. More significantly, in Oregon the analysis of insurance coverage issues is based on the specific terms of the policies, not on the courts' general concepts of what coverage various kinds of insurance should provide. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). The specific terms of the Umbrella policy show that the plaintiffs in the underlying case did not allege a covered claim.

■ The Umbrella policy excludes coverage for physical damage to "your own property." According to the underlying complaint, the release of pollutants physically damaged that property. Whether the reason for cleaning up the pollution was to restore the property to its full value for the benefit of its owners or to comply with governmental regulations for the benefit of the public, the remediation occurred on Martin's "own property." The Umbrella policy thus unambiguously excludes coverage for the second, fourth, and sixth claims.

Martin concedes in his brief that the seventh claim, for fraud, required proof that he acted with the intent to injure. Both policies contain exclusions for property damage that is either "expected or intended" by the insured. As a result, neither policy covered the seventh claim. *See Ledford*, 319 Or at 401-03; *American Casualty Co. v. Corum*, 139 Or App 58, 62-63, 910 P2d 1151, *on recons* 141 Or App 92, 917 P2d 39 (1996).

■ In the eighth claim, for negligent misrepresentation, the plaintiffs alleged that Martin and other owners negligently concealed the contamination, that they had a duty to disclose that information, and that as a result the plaintiffs had to incur substantial remediation costs and were otherwise damaged.[6] That claim is not based on physical damage

---

[6] The plaintiffs in the underlying case followed the unfortunately common practice of beginning each new claim by realleging the entire preceding complaint,

to the property but on the liability that the plaintiffs incurred when they purchased it. Both policies limit their coverage to bodily or personal injury and property damage, and both define "property damage" as "physical damage to or destruction of tangible property." The damages that the plaintiffs sought in the eighth claim were not for property damage under that definition. Rather, they were for having purchased property that, because of the concealed condition, was worth less, and came with greater liabilities, than the plaintiffs anticipated. That is a claim for economic damages that is not within the coverage of either policy.

Nothing in the allegations of the eighth claim suggests that the alleged misrepresentations caused any physical damage to tangible property. Rather, the plaintiffs alleged that the misrepresentations led them to purchase the property and thereby become liable to remedy the physical damage that had already occurred. There is thus no causal connection between the misrepresentations and the physical damage; the only causal connection is with damage to the plaintiffs' economic interests, which the policies do not cover. *See Safeco Ins. Co. of America v. Andrews*, 915 F2d 500 (9th Cir 1990); *Great Northern Ins. v. Benjamin Franklin Fed. S & L*, 793 F Supp 259 (D Or 1990), *aff'd* 953 F2d 1387 (9th Cir 1992); *Warner v. Fire Ins. Exchange*, 230 Cal App 3d 1029, 281 Cal Rptr 635 (1991); *Qualman v. Bruckmoser*, 163 Wis 2d 361, 471 NW2d 282 (App 1991).

■ In the ninth claim, for unjust enrichment, the plaintiffs alleged that they acted to remedy the contamination and that Martin and the other owners were unjustly enriched in the amount that the plaintiffs spent for that purpose. To the extent that this claim alleges economic injury to the plaintiffs, it does not involve property damage for the same reason that the claim for negligent misrepresentation does not. To the extent that it may allege property damage, the pollution

---

without considering which previous allegations are actually relevant to the new claim. As a result, the later claims technically include many irrelevant allegations. In his arguments on the eighth, ninth, and tenth claims, Martin relies in part on allegations that are technically part of the claim in question solely because of this failure by the underlying plaintiffs to think about what they actually needed to allege. In evaluating whether State Farm had a duty to defend Martin on these claims, we will consider only those allegations that could conceivably support the specific claim involved.

exclusion in the Farm policy and the owned property exclusion in the Umbrella policy justify the denial of coverage.

Finally, the tenth claim, for declaratory relief, raises the same issues as do the other claims and is excluded from coverage for the same reasons.

Affirmed.