**M.L. FOSS, INC., Plaintiff–Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

**No. 93CA0367.**

Colorado Court of Appeals, Div. I.

May 5, 1994.

Rehearing Denied June 16, 1994.

Certiorari Denied Dec. 19, 1994.

Glasman, Jaynes & McBride, Richard H. Glasman, Ronald C. Jaynes, Denver, for plaintiff-appellant.

Zarlengo, Mott, Zarlengo and Winbourn, P.C., Reed Winbourn, Todd Myers, Denver, for defendant-appellee.

Opinion by Judge BRIGGS.

Plaintiff insured, M.L. Foss, Inc., appeals the summary judgment entered in favor of defendant insurer, Liberty Mutual Insurance Company. In its complaint, plaintiff alleged that defendant had wrongfully refused to defend it in an action brought against it by a third party, that it failed to indemnify plaintiff for its alleged losses, and that defendant's processing of plaintiff's claim was in bad faith. We affirm.

Defendant issued two insurance policies to plaintiff, one a Comprehensive General Liability Policy (liability policy), effective from 1985 to January 1, 1987. The other policy, a Comprehensive Business Property Policy (business policy), was effective from January 1, 1985, to January 1, 1986.

In November of 1986, after the business policy had expired, but during the term of the liability policy, plaintiff sold certain real property, including improvements, to an independent company called Metalwest. Approximately seven months later, Metalwest was informed by a neighboring property owner that the property Metalwest had purchased from plaintiff was contaminated and that the Environmental Protection Agency (EPA) had instituted a cleanup plan.

Metalwest sued plaintiff on claims including of breach of contract and fraud. It sought indemnification based upon plaintiff's failure to disclose, prior to the sale of the property to Metalwest, either that the property was contaminated or that the EPA was investigating possible contamination. Metalwest sought damages resulting from the difference between the value of the property as represented by plaintiff and the value in light of the contamination and cleanup.

Plaintiff denied that it had knowledge of either the contamination or the EPA investigation prior to the sale to Metalwest, and it requested that defendant provide a defense to and coverage for Metalwest's claims. More than two years later, defendant denied coverage under either policy, and plaintiff filed this suit to recover against defendant.

■ In its order granting defendant's motion for summary judgment, the trial court provided the following analysis and conclusions:

An insurer has a duty to defend where the underlying complaint against the insured alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. New Hampshire Insurance Co.,* 811 P.2d 1083 (Colo.1991). Applying that standard, the Court concludes that Liberty Mutual had no duty to defend the claims brought by Metalwest against M.L. Foss in the underlying action.

First, the claims in the underlying action are all based upon M.L. Foss's alleged intentional or knowing failure to disclose material facts in connection with the sale of the Rio Court property to Metalwest. Thus, the underlying complaint does not allege an 'occurrence,' i.e. an 'accident' resulting in 'property damage neither expected nor intended.'

While neither party has cited any Colorado law directly on point, the general rule clearly appears to be that alleged misrepresentations made in connection with the sale of property does not constitute an 'occurrence' as that term is uniformly defined in comprehensive general liability policies. See *Safeco Insurance Co. of America v. Andrews,* 915 F.2d 500 (9th Cir.1990); *American States Insurance Co. v. Canyon Creek,* 786 F.Supp. 821 (N.D.Calif.1991); *Cunningham & Walsh, Inc. v. Atlantic Mutual Insurance Co.,* [88 Or.App. 251], 744 P.2d 1317 (Or.App.1987); *R.A. Earnhardt, Etc. v. South Carolina Ins.* [277 S.C. 88], 282 S.E.2d 856 (S.C. 1981).... Plaintiff has cited no authority to the contrary. Accordingly, the Court concludes that the underlying complaint does not allege facts that even arguably might constitute an 'occurrence' within the meaning of the liability policy.

The Court rejects plaintiff's contention that paragraphs 40 and 41 of the underlying complaint allege a claim of negligent misrepresentation. Paragraph 40 of the complaint alleges that 'Foss concealed or failed to disclose the facts with the intent of creating a false impression....' Paragraph 41 alleges that 'Foss concealed or failed to disclose the material facts with the intent that the plaintiff would purchase the assets....' On their face these are allegations of intentional, rather than negligent, nondisclosure.

Even assuming that paragraphs 40 and 41 of the underlying complaint could be read to allege negligent misrepresentation, the underlying complaint does not allege 'property damage' within the meaning of the policy. The damage alleged in the underlying complaint is monetary damage resulting from the difference in the value

of the property between what was represented by M.L. Foss in connection with the sale and the actual value of the property in light of the undisclosed contamination and EPA investigation. Thus, the alleged damages did not constitute 'property damage' as defined by the liability policy. That is, it did not allege 'physical injury to or destruction of tangible property....' Rather, the underlying complaint alleged purely economic losses resulting from the alleged nondisclosure of material facts in connection with the sale. Purely economic losses do not constitute 'property damage' within the meaning of the liability policy. See *Lamar Truck Pláza, Inc. v. Sentry Ins.*, 757 P.2d 1143 (Colo.App.1988); *Allstate Ins. Co. v. Miller*, 743 F.Supp. 723 (N.D.Calif.1990); *American States Ins. Co., supra; Safeco Ins. Co. of America, supra.* Accordingly, because the underlying complaint did not allege 'property damage' there was neither a duty to defend nor coverage under the liability policy.

Nor was there a duty to defend or coverage under the business policy. Initially, the business policy is a first-party policy while the underlying action by Metalwest was a third-party claim. Further, the event giving rise to the underlying action was the November 12, 1986 sale of the property which occurred outside of the effective dates (January 1, 1985 to January 1, 1986) of the business policy. Finally, even if the business policy could somehow be interpreted to otherwise apply, coverage under that policy would be excluded under ... exclusions [for] ... fraudulent acts ... (b) contamination ... and (c) losses occurring to land.... Accordingly, the Court concludes that there was neither a duty to defend nor coverage under the business policy.

We agree with and adopt the analysis and conclusions of the trial court. Under the terms of the insurance policies, defendant was neither obligated to defend plaintiff against the Metalwest suit nor required to provide insurance coverage for the alleged damages.

Plaintiff asserts that the court nevertheless erred in dismissing its claim for breach of the duty of good faith and fair dealing. Plaintiff argues on appeal that it was not claiming that the tort of bad faith lay in defendant's denial of coverage and refusal to defend plaintiff against Metalwest, but rather was based upon the manner in which defendant processed the claim. In oral arguments, counsel for plaintiff asserted that M.L. Foss, a principal in plaintiff's corporation, had suffered emotional distress resulting solely from defendant's delay in processing the insurance claim.

To accept plaintiff's argument would require that we construe the complaint, which alleges only economic damages resulting from plaintiff having to defend and pay the settlement of the suit brought against it by Metalwest, as having sufficiently alleged emotional distress to an individual who is not a party to this suit. It would further require us to determine that a corporation can recover damages for emotional distress on behalf of an individual. However, even if we accepted these propositions, plaintiff still could not prevail on the claim.

■ Damages for emotional distress are recoverable in an action for bad faith breach of insurance contract only when the emotional distress results from substantial property or economic loss caused by the insurer's conduct. *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243, 1246 (Colo.App.1988) ("By requiring a showing of substantial property or economic loss, the threat of fictitious claims is sufficiently reduced to obviate the need for a showing of intent to inflict severe emotional distress or bodily injury.").

■ Here, plaintiff has not alleged any property or economic loss caused by defendant's delay in informing plaintiff that it was refusing to provide insurance coverage for or a defense against Metalwest's claims. Therefore, even if we assume that a plaintiff in some circumstances could state a claim for bad faith despite the absence of insurance coverage or a duty to defend, *cf. Jarnagin v. Banker's Life & Casualty Co.*, 824 P.2d 11 (Colo.App.1991), in the circumstances presented here, the trial court was correct in dismissing the bad faith claim. *See Farmers Group, Inc. v. Trimble, supra.*

Plaintiff's other contentions are without merit.

Judgment affirmed.

NEY and ROY, JJ., concur.