**CYPRUS AMAX MINERALS COMPANY, a Delaware corporation, Plaintiff–Appellant,**

v.

**LEXINGTON INSURANCE COMPANY, a Delaware corporation; Zurich Specialties London Limited, a Swiss corporation; and Gerling–Konzern Allgemeine Versicherungs–AG, a German corporation, Defendants–Appellees.**

No. 01CA0208.

Colorado Court of Appeals, Div. IV.

Feb. 28, 2002.

Certiorari Granted Sept. 23, 2002.

Fognani Guibord Homsy & Roberts, LLP, John D. Fognani, R. Kirk Mueller, Denver, Colorado, for Plaintiff–Appellant.

White & Steele, P.C., Michael Anderson, Kurt A. Horton, Frederick W. Klann, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

In this action for reimbursement of costs it paid to investigate, defend, and settle a lawsuit, plaintiff, Cyprus Amax Minerals Company, appeals the summary judgment entered in favor of defendants, Lexington Insurance Company, Zurich Specialties London Limited, and Gerling–Konzern Allgemeine Versicherungs–AG (insurers). We affirm.

Insurers each issued a claims made excess liability insurance policy to Cyprus providing excess coverage for liability imposed upon or assumed by Cyprus for, among other things, damages on account of "property damage" resulting from a "loss" as defined in the policies.

In 1993, Cyprus conveyed its majority interest in a mine to Coeur d'Alene Mines Corporation (Coeur) through a stock purchase agreement. Three years later, Coeur sued Cyprus, alleging it had learned that portions of the slope at the mine site were sustaining subsurface movement. According to Coeur's second amended complaint, this ground movement required substantial remediation and rendered the property worthless as an operating mine.

In its lawsuit against Cyprus, Coeur asserted claims for violation of the Idaho and Colorado securities acts, intentional or reckless misrepresentation in violation of the Idaho and Colorado securities acts, fraud, and rescission, all based on Cyprus' alleged failure to disclose information regarding frequent and pervasive incidents of ground instability at the mine. Coeur sought return of the purchase price of the mine together with interest, costs, attorney fees, and expenses it had incurred as a result of Cyprus' misrepresentations and omissions, and also rescission of the stock purchase agreement.

The litigation between Coeur and Cyprus was resolved by a settlement agreement, and Cyprus then requested indemnification from insurers for its defense and liability costs. Insurers denied Cyprus' claim on the basis that Cyprus' liability was not covered by their policies, and Cyprus filed this suit against insurers, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade acts and practices.

The trial court granted insurers' motions for summary judgment, determining that Cyprus' alleged losses were not covered by the policies issued by insurers.

## I. Standard of Review

Summary judgment is appropriate only when the pleadings and supporting documents demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Our review of a summary judgment is de novo. *Vail/Arrowhead, Inc. v. District Court*, 954 P.2d 608, 611 (Colo. 1998); *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1224 (Colo.App.2000).

## II. Insurance Policies

Cyprus first contends that the trial court erred in failing to apply the plain language of the insurance policies and ignoring Colorado case law governing the construction of insurance contracts. We disagree.

### A.

An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contract inter-

pretation. The interpretation of an insurance contract is a matter of law, which we review de novo. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999).

■ The language of an insurance policy should be enforced according to its plain terms if they are clear and unambiguous. *Tynan's Nissan, Inc. v. American Hardware Mut. Ins. Co.,* 917 P.2d 321, 323 (Colo.App. 1995).

The insurance policies at issue here provide in pertinent part that the underwriters will indemnify the insured by reason of the liability "(a) imposed upon the Insured by law, or (b) assumed by the Insured under contract or agreement, for damages on account of ... Property Damage ... resulting from each Loss, but only such ... Property Damage ... neither expected nor intended by the Insured."

The policies define "property damage" as "(a) physical injury to or destruction of tangible property, including the loss of use thereof resulting therefrom; (b) loss of use of tangible property which has not been physically injured or destroyed." The term "loss" is defined as "an accident, including continuous or repeated exposure to the same general harmful conditions." This definition of "loss" is similar to the definition of "occurrence" often used in comprehensive general liability policies. *See Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083 (Colo. 1991).

In its order granting summary judgment, the trial court concluded that "[a]ll six claims in ... [Coeur's] Second Amended Complaint are based upon allegations that Cyprus negligently, recklessly, or intentionally failed to disclose to Coeur material facts about the Mine, which [a]ffected the value of the transaction between Coeur and Cyprus," and "[t]hese allegations are not allegations of 'property damages' under that definition in the policy."

The allegations of Coeur's second amended complaint support this determination because that complaint did not allege liability for "property damage." Coeur's complaint sought to hold Cyprus liable for fraud and misrepresentations in connection with the sale of the mine. These claims did not expose Cyprus to liability for causing damage to the property, but rather for economic losses resulting from the alleged misrepresentation of the value of the mine. Such damages are not "property damage" within the meaning of insurers' policies. *See M.L. Foss, Inc. v. Liberty Mut. Ins. Co.,* 885 P.2d 284 (Colo.App.1994)(damages for difference between actual value of property and value of property as represented by insured in connection with sale are not property damages); *see also Safeco Ins. Co. v. Andrews,* 915 F.2d 500 (9th Cir.1990)(economic losses resulting from failure to disclose facts relevant to the property's value are not property damages); *State Farm Fire & Cas. Co. v. Brewer,* 914 F.Supp. 140 (S.D.Miss.1996)(claims of negligent and intentional misrepresentation and fraud are pecuniary in nature); *Bush v. Beal,* 26 Kan.App.2d 183, 987 P.2d 1103 (1999)(economic losses sustained by misrepresentations are not property damage); *Qualman v. Bruckmoser,* 163 Wis.2d 361, 471 N.W.2d 282 (Ct.App.1991)(damages for claims of breach of contract and misrepresentation are pecuniary in nature and do not constitute property damages).

We also reject Cyprus' contention that the language in the insurance policies does not support the "causal nexus" analysis urged by insurers. As insurers contend, the policy language requiring that the alleged "property damage" *result from* a "loss" creates a requirement for a causal connection between the "property damage" and Cyprus' alleged misrepresentations.

Here, although the physical damage sustained by the mine was described in Coeur's complaint, nothing in that complaint alleged that Cyprus' misrepresentations caused any damage to the mine. Rather, Coeur alleged that the misrepresentations led it to purchase the mine and subsequently incur the cost of remediating damage to the mine site and closing the mine. Thus, there is no causal connection between the alleged misrepresentations and the physical damage; the only causal connection is between Cyprus' misrepresentations and Coeur's economic losses. *See Martin v. State Farm Fire & Cas. Co.,* 146 Or.App. 270, 932 P.2d

1207 (1997)(no causal connection between misrepresentations and physical damage); *State Farm Lloyds v. Kessler,* 932 S.W.2d 732 (Tex.App.1996)(alleged misrepresentations did not expose insured to liability for damage to tangible property); *see also Safeco Ins. Co. v. Andrews, supra* (claim of misrepresentation did not expose insured to liability for damage to tangible property); *State Farm Fire & Cas. Co. v. Brewer, supra* (alleged misrepresentation of defendants did not cause property damage); *Bush v. Beal, supra* (damage to conveyed property not caused by negligent misrepresentation).

Nor are we persuaded that *Compass Insurance Co. v. City of Littleton, supra,* upon which Cyprus relies, requires a different result. The supreme court in *Compass* held that if the insurers had intended the term "damages" to have only a limited, technical meaning, they had the opportunity to indicate this limitation clearly in their policies, but did not do so. Cyprus reasons that insurers could have stated in their policies that coverage was not intended for monetary claims based on intentional or negligent misrepresentations of an insured, rather than relying on a causal nexus analysis. However, the absence of such a provision here is not controlling. Rather, Cyprus' claim fails because Coeur sought recovery for economic losses, not property damage, and because there was no causal connection between the alleged misrepresentations and the physical damage.

### B.

Cyprus also contends that the trial court erred in concluding that its claim is barred from insurance coverage by the holding in *M.L. Foss, supra.* We disagree.

In *M.L. Foss,* the insured sold property to a purchaser, who later learned that the property was contaminated and that the Environmental Protection Agency had instituted a cleanup plan. The purchaser sued the insured on claims including breach of contract and fraud and sought damages resulting from the difference between the value of the property as represented by the insured and the value in light of the contamination and cleanup.

A division of this court concluded in *M.L. Foss* that, because the underlying complaint did not allege "property damage," there was no coverage under the liability policy. The division reasoned that misrepresentations made in connection with the sale of property do not constitute an "occurrence" or "accident" within the meaning of comprehensive general liability policies. Without deciding whether negligent misrepresentations are "accidents," the division concluded that even if the complaint alleged negligent misrepresentation, it did not allege "property damage" within the meaning of the policy. Rather, the complaint alleged purely economic losses resulting from the alleged nondisclosure of material facts in connection with the sale.

Cyprus contends that *M.L. Foss* is factually distinguishable because it did not involve physical injury or the loss of use of tangible property. We disagree.

Here, Coeur, much like the purchaser in *M.L. Foss,* alleged economic losses resulting from nondisclosure of material facts. Coeur sought return of the purchase price of the mine on grounds that the securities were worth substantially less than what Coeur had paid Cyprus for the investment. Even the reimbursement requested for costs and expenses Coeur had or would incur were alleged "as a result of the representations and omissions which entitled [Coeur] to rescind said transaction." Any allegations in Coeur's complaint of the costs of remediation or the mine's instability and unsuitability for mining operations from the date of contracting were made in support of its misrepresentation claims.

Nor are we persuaded by Cyprus' contention that *M.L. Foss* is distinguishable because it does not categorically bar coverage for negligent misrepresentation claims.

Here, the trial court acknowledged that some of Coeur's claims alleged negligence and not intentional or knowing conduct, but found that "the complaint against Cyprus is based on monetary damages and rescission for not properly representing the mine in the true light." The court concluded that "[t]he fact that some claims allege negligence rath-

er than intentional or reckless conduct is not significant." We agree.

The division in *M.L. Foss* relied on *Safeco Insurance Co. v. Andrews, supra,* a decision involving facts similar to those in the present case. In *Safeco,* an insured seller of a home sought a declaration that its insurer had a duty to defend and indemnify the insured in a suit by the purchaser of the home. The purchaser alleged misrepresentation based on the insured's failure to inform the purchaser of facts affecting the value or desirability of the property, including facts that the property had a serious problem with unstable, shifting, and moving earth, defective electrical wiring, defective plumbing, and water leakage. The policy provided that the insurer would defend against a claim for "damages because of ... property damage caused by an occurrence."

The Ninth Circuit Court of Appeals held that the relief sought by the purchaser was not for damage to tangible property, but rather for "economic loss resulting from [the insured's] alleged failure to discover and disclose facts relevant to the property's value and desirability." *Safeco Ins. Co. v. Andrews, supra,* 915 F.2d at 502. The court further concluded that although the defective condition of the property was "an element of [the purchaser's] claims, the defects cannot ... be considered the cause of [the purchaser's] damages." Further, "[t]he cause of the damage was [the insured's] alleged misrepresentations, which are not an 'occurrence' ... under the terms of the policy." *Safeco Ins. Co. v. Andrews, supra,* 915 F.2d at 502. Thus, there was no potential for liability within the scope of the insurance coverage.

Even if we assume that Coeur's complaint alleged negligent misrepresentation and that the division in *M.L. Foss* did not categorically bar coverage for such claims, Cyprus is not entitled to indemnification for these claims. Coeur, much like the purchaser in *M.L. Foss,* sought economic damages stemming from misrepresentations and fraud, and not property damages.

## C.

In support of its position, Cyprus further contends that other states recognize that property damage arising from misrepresentations is covered by comprehensive general liability insurance policies. We are not persuaded.

The cases cited by Cyprus support the proposition that a negligent misrepresentation may constitute an "occurrence" or "accident" within the meaning of various liability insurance policies. *See First Newton Nat'l Bank v. General Cas. Co.,* 426 N.W.2d 618 (Iowa 1988)(negligence in explaining financing of two distressed farms); *Gaylord Chem. Corp. v. ProPump, Inc.,* 753 So.2d 349 (La.Ct.App.2000)(representation that pump would perform to certain specifications); *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 679 A.2d 540 (1996)(septic system represented to be in good working condition); *Wood v. Safeco Ins. Co.,* 980 S.W.2d 43 (Mo.Ct.App.1998)(representation that residence not located in flood plain); *State Farm Fire & Cas. Co. v. Helminiak,* 74 Ohio Misc.2d 91, 659 N.E.2d 385 (Com.Pl.1995)(representation that bridge could be built).

However, these cases represent the minority view. In *M.L. Foss,* the division noted that the generally accepted rule was that alleged misrepresentations made in connection with the sale of property do not constitute an "occurrence." *See also* Gregory T. Lawrence, *Sheets v. Brethren Mutual: Maryland's High Court Misconstrues CGL to Cover Excluded Economic Loss Caused by Negligent Misrepresentation,* 27 U. Balt. L. Rev. 189 (1997)(recognizing the majority of jurisdictions follow the rule in *Safeco Ins. Co. v. Andrews, supra,* that general liability insurance policies do not cover liability from negligent misrepresentations either because of lack of occurrence or property damage).

Here, we need not address whether a negligent misrepresentation can ever constitute an "occurrence" or "loss" under a general liability insurance policy. Because Coeur sought economic losses from the alleged nondisclosure and not losses from "property damage," and because Coeur did not allege a causal connection between Cyprus' misrepresentations and the incidents of property dam-

age at the mine, we conclude that Coeur's claims are not covered by insurers' policies.

### III.   No Material Disputed Facts

■  Asserting that the question of what Coeur alleged and sought to recover is a disputed factual issue, Cyprus finally contends that the trial court erred in concluding there were no material disputed facts.   To this end, Cyprus argues that the court erred in restricting its review to the second amended complaint, ignoring evidence in affidavits and exhibits.   We disagree.

■  The duty to defend is broader than the duty to indemnify.   The obligation to defend arises from allegations in the complaint that, if sustained, would impose liability covered by the policy.   *Hecla Mining Co. v. New Hampshire Ins. Co., supra,* 811 P.2d at 1089; *Employers' Fire Ins. Co. v. Western Guar. Fund Servs.,* 924 P.2d 1107, 1110–11 (Colo.App.1996).   The duty to indemnify relates to the duty to satisfy a judgment entered against the insured.   *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo.1996).   Whether coverage is ultimately available under a contract is generally a question of fact to be decided by the trier of fact.   *Hecla Mining Co. v. New Hampshire Ins. Co., supra,* 811 P.2d at 1089; *see Constitution Assocs. v. New Hampshire Ins. Co., supra* (issue of coverage or duty to indemnify must await final resolution of underlying case).

■  However, if there is no duty to defend, there is no duty to indemnify.   *City of Arvada v. Colorado Intergovernmental Risk Sharing Agency,* 988 P.2d 184, 187 (Colo.App.1999), *aff'd,* 19 P.3d 10 (Colo.2001). The duty to indemnify does not arise unless the policy actually covers the alleged harm. *Constitution Assocs. v. New Hampshire Ins. Co., supra,* 930 P.2d at 563.   Thus, if a complaint does not allege any facts that could impose liability covered by the policy, there can be no duty to defend or to indemnify. *See TerraMatrix Inc. v. United States Fire Ins. Co.,* 939 P.2d 483 (Colo.App.1997); *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger,* 934 P.2d 909 (Colo.App.1997).

Here, insurers filed motions for summary judgment asserting that Coeur's lawsuit did not allege property damage resulting from a loss;   instead, the lawsuit sought to recover for uncovered economic damages, that is, the amount originally paid for the stock.   In response, Cyprus asserted, among other things, that Coeur's claims sought damages arising from property damage.   Cyprus submitted several affidavits from expert witnesses, the stipulation of settlement, and other materials, including a letter from Coeur regarding a possible settlement, which included an itemization of damages for stabilization costs at the mine.   Cyprus' affidavits contain information regarding the extent of the damage the mine sustained, as well the "opinion" of various experts that the insurance policies at issue provide coverage for the claims asserted by Coeur.

In granting summary judgment, the trial court stated that "this [motion] turns on the nature of the Second Amended Complaint of Coeur against Cyprus" and did not discuss Cyprus' affidavits or the settlement materials.   We perceive no error.

Expert testimony that the insurers' policies provide coverage does not create an issue of fact.   Such testimony is merely an opinion on the legal question of coverage. *See Tynan's Nissan, Inc. v. American Hardware Mut. Ins. Co., supra.*   Consequently, the court did not err in ignoring Cyprus' affidavits.

■  Cyprus also submitted the stipulation of settlement, which states, "The payment of the Settlement Amount by Cyprus to Coeur is and shall be for, and only for, the payment of alleged direct and actual property damage claims of Coeur."   In support, Cyprus cites *Home Insurance Co. v. St. Paul Fire & Marine Insurance Co.,* 229 F.3d 56 (1st Cir.2000), and *Bankwest v. Fidelity & Deposit Co.,* 63 F.3d 974 (10th Cir.1995), in which the courts determined that when a case is settled, the duty to indemnify must be determined on the basis of the settlement. In both cases, however, the courts first determined that the insurer had a duty to defend against at least one of the claims brought against the insured.

Further, insurers here were not parties to the settlement agreement and were not bound by its terms. Additionally, the duty to defend arises from the factual allegations in the complaint, not the recitals in the settlement agreement or in correspondence. *See Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger, supra* (actual liability of insured is not the criterion for the insurance company's obligation to defend).

In the present case, although the underlying litigation was resolved through a settlement agreement, because we conclude that Coeur did not allege any facts that would give rise to a duty to defend or to liability under the policies at issue, we conclude that insurers had no duty to indemnify Cyprus. *See Constitution Assocs. v. New Hampshire Ins. Co., supra; Hecla Mining Co. v. New Hampshire Ins. Co., supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge VOGT concur.