**STATE FARM LLOYDS and State Farm Fire and Casualty Company, Appellants,**

v.

**Paul and Mary KESSLER, Appellees.**

No. 2–96–024–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 31, 1996.

Rehearing Overruled Nov. 27, 1996.

733

Shannon, Gracey, Ratliff & Miller, L.L.P., Anne Gardner, Julia A. Dobbins and J. Wade Birdwell, Fort Worth, for Appellant.

David R. Casey, Hurst, for Appellee.

Before DAUPHINOT, RICHARDS and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

Appellants State Farm Lloyds and State Farm Fire and Casualty Company ("State Farm") bring this appeal of a judgment declaring that they have a duty to defend Appellees Paul and Mary Kessler ("The Kesslers") in a suit pending against them. In

two points of error, State Farm alleges that the trial court erred "because, as a matter of law, appellants owe no duty to defend since the pleadings in the suit against the Kesslers allege no claim for 'property damage' [or] . . . for damages caused by an 'occurrence' or 'loss.' "

### DISPOSITION

We hold that State Farm has no duty to defend the Kesslers because (1) the Fannings' petition does not allege property damage as defined by the policy and (2) it does not allege damages deriving from an occurrence or loss as defined by the policy. Therefore, we affirm State Farm's points of error, reverse the judgment of the trial court, and render judgment for State Farm.

### FACTS

#### A. *The Fanning Litigation*

John and Alison Fanning ("The Fannings") sued the Kesslers for breach of contract, breach of warranty, and DTPA violations. They alleged that the Kesslers made oral and written misrepresentations about their home at 417 Elisha Drive in Bedford, Texas to induce the Fannings to buy it. Specifically, the Fannings allege that the Kesslers told them the property had no drainage or foundation problems when in reality it had severe drainage and foundation problems. The Fannings further allege that the Kesslers knew these statements were false when made and that they knew the statements would induce the Fannings to buy a property they would not have bought had they known the truth about its condition.

#### B. *State Farm's Involvement*

The Kesslers have a standard homeowner's policy and a personal liability umbrella policy with State Farm, so State Farm defended the Kesslers in the Fanning suit, subject to the right to assert certain grounds for noncoverage and to obtain a declaration of the parties' rights. State Farm continues to defend the Kesslers, subject to its right to assert grounds for noncoverage.

#### 1. *The Homeowner's Policy*

The relevant portion of the homeowner's policy states:

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable.

. . . .

### DEFINITIONS

. . . .

5. *"Occurrence"* means an accident including exposure to conditions, which results in *bodily injury* or *property damage* during the policy period.
6. *"Property damage"* means injury to, destruction of, or loss of use of property.

#### 2. *The Personal Liability Umbrella Policy*

The relevant portion of the policy states:

**Coverage L—Personal Liability.** If you are legally obligated to pay damages for a loss, we will pay your **net loss** minus the **retained limit**.

. . . .

### DEFINITIONS

. . . .

6. "loss" means an accident that results in **personal injury** or **property damage** during the policy period. This includes injurious exposure to conditions.

. . . .

11. "**property damage**" means physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction.

### STANDARD OF REVIEW

State Farm argues that its appeal is based on an agreed statement of facts under Texas

Rule of Civil Procedure 263 and that therefore we should not presume findings in favor of the judgment. The Kesslers argue that the appeal is not based on an agreed statement of facts under that rule and that therefore we should presume findings in favor of the judgment and construe the record in the light most favorable to that judgment.

An agreed statement of facts under rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law.[1] The only issue on appeal is whether the trial court properly applied the law to the agreed facts.[2] The appellate court is limited to those facts unless other facts are necessarily implied from the express facts in the statement.[3] In an appeal of an "agreed" case, there are no presumed findings in favor of the judgment,[4] and the pleadings are immaterial.[5]

Because the issue on appeal is a pure question of law, the appellate court performs a de novo review.[6] A de novo review is less deferential than ordinary reviews because a trial court has *no* discretion in deciding what the law is or in properly applying it.[7]

Rule 263 requires that the parties submit the agreed statement to the clerk and that the court certify it.[8] Certification shows the appellate court the facts upon which the trial court based its judgment.[9] But even when the parties fail to conform to the technical requirements of the rule, an appellate court may treat the case as a case involving an agreed statement of facts under rule 263 if the record indicates that the trial court heard the case on stipulated facts.[10]

In *Lambda Constr. Co.*, no agreed statement of facts existed, but the order discussed a telephone hearing during which the court verified with the parties that no material issue of fact existed and that the only issue was liability.[11] No one objected to the order.[12] The Austin Court of Appeals held that the parties had "stipulated to all of the material facts of the case" and found that the trial court had "apparently treated the telephone stipulation" as an agreed statement of facts.[13]

In the case at bar, the agreed statement, signed by counsel for both parties, was not submitted until after the judgment was signed. But it indicates that the parties had stipulated to the facts before the court signed the judgment:

> After timely notice, the district court conducted a hearing on State Farm's Motion for Summary Judgment on November 17, 1995. The parties informed the court that a record would not be necessary, so the court considered only the motion for summary judgment, the attached exhibits, the brief in response, and the argument of counsel in reaching its decision. In open court, the district court denied State Farm's motion.

1. *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 634 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

2. *Id.* at 635; *Sharyland Water Supply Corp. v. Hidalgo County Appraisal Dist.*, 783 S.W.2d 297, 298 (Tex.App.—Corpus Christi 1989), *aff'd, North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894 (Tex.1991).

3. *Sharyland Water Supply Corp.*, 783 S.W.2d at 298; *Gulf Atlantic Life Ins. Co. v. Disbro*, 613 S.W.2d 511, 512 (Tex.Civ.App.—Beaumont 1981, no writ).

4. *Gulf Atlantic Life Ins. Co.*, 613 S.W.2d at 512.

5. *Transceiver Corp. of America v. Ring Around Prod., Inc.*, 595 S.W.2d 623, 629 (Tex.Civ.App.—Tyler 1980, no writ.)

6. *Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995).

7. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Dallas Fire Ins. Co. v. Davis*, 893 S.W.2d 288, 291 (Tex.App.—Fort Worth 1995, orig. proceeding).

8. Tex. R. Civ. P. 263.

9. *American Nat'l Ins. Co. v. Briones*, 570 S.W.2d 574, 577 (Tex.Civ.App.—Corpus Christi 1978, no writ).

10. *Lambda Constr. Co. v. Chamberlin Waterproofing and Roofing Sys.*, 784 S.W.2d 122, 125 (Tex. App.—Austin 1990, writ denied); *American Nat'l Ins. Co.*, 570 S.W.2d at 577.

11. *Lambda Constr. Co.*, 784 S.W.2d at 125.

12. *Id.*

13. *Id.*

*Agreeing that the 'eight corners' doctrine similarly limited the scope of the district court's evidentiary review to the same evidence, i.e., the pleadings in the Fanning litigation and the terms of the homeowners and umbrella policies, and further agreeing that no issue of material fact existed for determination by a finder of fact and that the only question presented for determination was a question of law for the court,* State Farm and the Kesslers immediately submitted the case to the district court for final determination at this hearing. . . .

*In reaching this final decision the district court considered only the [homeowners policy, the umbrella policy, and the live petition of the Fannings].* [Emphasis added.]

Because the record shows the case was tried on stipulated facts, we will review it under the standard for agreed cases.[14]

### SUBSTANTIVE LAW

#### A. *The Duty to Defend*

 An insurer's duty to defend is usually determined by looking solely at the allegations in the pleadings of the underlying suit in the light of the policy provisions, regardless of the truth of the allegations.[15] Texas courts follow this "eight corners" rule, examining only the allegations in the pleadings and the language of the policy in their determination of the insurer's duty to defend.[16] Interpretation of insurance policies is governed by the rules of contract interpretation.[17] The words in an insurance policy are given their ordinary meaning unless the policy clearly gives them a different meaning.[18] When there are no ambiguities, the policy alone expresses the parties' intent, and its language must be enforced as written.[19]

 The inquiry into an insurer's duty to defend focuses on facts pled, not legal theories.[20] If the pleadings allege facts within coverage or would allow evidence to be introduced on a claim within coverage, the insurer must defend.[21] The pleadings must be liberally construed in the insured's favor,[22] but the interpretation must be fair and reasonable.[23] The insurer may rely on the allegations in the petition against the insured in deciding whether it should defend the suit;[24] it has no duty to look *beyond* the policy and pleadings to determine if facts within cover-

14. *Lambda Constr. Co.,* 784 S.W.2d at 125; *American Nat'l Ins. Co.,* 570 S.W.2d at 577. We note, however, that even if we had chosen not to imply the rule 263 agreed statement and had relied only on the agreed statement in the transcript, the standard of review would be the same. Rule 50(c) of the Texas Rules of Appellate Procedure provides that

> [t]he parties may agree upon a brief statement of the case and of the facts proven as will enable the appellate court to determine whether there is error in the judgment. Such statement shall be copied into the transcript in lieu of the proceedings themselves.

Tex. R. App. P. 50(c).
A reviewing court treats this agreed statement of facts as including all facts in the case and cannot presume or infer any fact or finding not contained in the statement unless it is necessarily implied from an express fact in the agreed statement. *Richey v. Bolerjack,* 594 S.W.2d 795, 799 (Tex.Civ.App.—Tyler 1980, no writ); *Preston v. Sears, Roebuck & Co.,* 573 S.W.2d 560, 563 (Tex. Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

15. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973); *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied).

16. *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 499 (Tex.App.—Houston [14th Dist.] 1995,

no writ) (op. on reh'g); *American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153 (Tex. App.—Dallas 1990, writ dism'd).

17. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994).

18. *Security Mut. Casualty Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979).

19. *Yancey,* 755 S.W.2d at 918.

20. *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, writ denied).

21. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965); *Terra Int'l, Inc.,* 829 S.W.2d at 271.

22. *Terra Int'l, Inc.,* 829 S.W.2d at 271–72.

23. *Millers Mut. Fire Ins. Co. of Texas v. Texoma Directional Drilling Co.,* 622 S.W.2d 899, 901 (Tex.App.—Fort Worth 1981, no writ).

24. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982).

age could have been pled.[25] If the pleadings do not allege facts within coverage, the insurer has no duty to defend.[26]

## B. *Property Damage*

 In its first point of error, State Farm argues that the trial court erred in granting the declaratory judgment because State Farm has no duty to defend, given that the Fannings' petition alleges no claim for "property damage." We sustain this point of error.

In both policies, property damage is defined as the injury to or destruction of tangible property, including loss of use.

The Fannings' petition, as the Kesslers point out, does describe drainage and foundation problems. But those problems are not "property damage" for which the Kesslers are legally liable because the Fannings do not assert that the Kesslers injured the property, destroyed the property, or caused the resulting loss of use. Instead, the Fannings allege that the Kesslers misrepresented the problems. The Kesslers' alleged misrepresentations did not *cause* the drainage and foundation problems; those problems existed before negotiations began.

The Fannings do allege economic damages; that is, repair costs to restore the property to the condition at which the Kesslers represented it and loss of use and enjoyment because of the Kesslers' allegedly wrongful conduct. In Texas, economic damages are not property damages as defined by liability insurance policies.[27] In addition, the Fannings' economic damages, including loss of use, arose because of the Kesslers' alleged misrepresentations about the property; they arose because the Fannings did not get the property they bargained for.

The Kesslers rely on *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*[28] In that case, the Dallas Court held that drainage problems and floor displacement did fall within the definition of property damage.[29] Yet the underlying petition in that case also alleged that the insured was "negligen[t] in disbursing funds for construction of the property and in failing to correct the alleged defects in the property."[30] Furthermore, the Dallas Court did not discuss the misrepresentation claim in conjunction with property damages. Therefore, the Dallas Court could have found that the insured in that case caused the problems with the property, a situation we do not have here.[31]

Even if some economic damages could fall within the definition of property damage (and in Texas they do not), courts uniformly hold that those resulting from misrepresentations do not.[32]

---

25. *See Heyden Newport Chem. Corp.*, 387 S.W.2d at 24 (disagreeing with the Court of Civil Appeals who held that a court must look beyond the pleadings and policy); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1367–68 (5th Cir.1987) (applying Texas law to hold that the proper question in determining duty is not what could have been pled, but what was pled).

26. *Fidelity & Guar. Ins. Underwriters, Inc.*, 633 S.W.2d at 788.

27. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.—Houston [1st Dist.], writ denied); *Terra Int'l Inc.*, 829 S.W.2d at 273; *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686–87 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

28. 852 S.W.2d 252 (Tex.App.—Dallas 1993, writ denied).

29. *Id.* at 256.

30. *Id.* at 254.

31. To the extent that the Dallas Court's analysis of "property damage" does relate to the misrepresentation claims, we disagree with it. Also, while we do not address the issue, we note that the Ninth Circuit has held that an insured's policy provides no coverage even if tort claims are alleged, as long as the claims, as here, are based on a contract. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1365 (9th Cir.1991).

32. *See State Farm Fire & Casualty Co. v. Brewer*, 914 F.Supp. 140, 142–43 (S.D.Miss.1996) (holding that termite damage does not fall within the meaning of property damage in the policy because the alleged misrepresentations did not cause the damage; the termites did); *Allstate Ins. Co. v. Morgan*, 806 F.Supp. 1460, 1464 (N.D.Cal.1992) (holding that claims alleging negligent misrepresentation and failure to disclose seek economic damages, not property damages within insured's policy); *Qualman v. Bruckmoser*, 163 Wis.2d 361, 471 N.W.2d 282, 285 (1991) (holding that pecuniary damages are not property damages under insured's policy).

We hold that the damages alleged by the Fannings are economic damages, not property damages. Therefore we sustain State Farm's first point of error.

### C. *Occurrence or Loss*

■ Even if the damages alleged were property damages, which they are not, they did not result from an occurrence or loss. In its second point of error, State Farm claims that the trial court erred in granting the declaratory judgment because State Farm has no duty to defend the Kesslers as a matter of law, given that the Fannings' pleadings allege no claim for damages caused by an occurrence or loss. We sustain this point of error.

The Kesslers' homeowner's policy requires that the property damages be caused by an occurrence. The policy defines *occurrence* as "an accident, including exposure to conditions, which results in . . . **property damage** during the policy period." The umbrella policy requires that a loss cause the property damage. The policy defines *loss* as "an accident that results in . . . **property damage** during the policy period. This includes injurious exposure to conditions." Because neither an accident nor exposure to conditions caused the damages alleged by the Fannings, no occurrence or loss happened. Therefore, the policies do not cover the damages sought by the Fannings.

■ Under Texas law, when the insured's acts are voluntary and intentional, the results or injuries, even if unexpected, are not caused by an "accident," [33] and therefore the event is not an "occurrence" under the policy.[34]

The Fannings allege that

[i]n connection with the purchase and sale of this property, Defendants [the Kesslers] made certain specific statements concerning the condition of the property. These statements were made as part of the contract for the sale of the Property to the Fannings. Further, there were significant omissions from the disclosures made both in writing and orally by Defendants to the Fannings. These statements and omissions were made with the knowledge that the Fannings would rely upon them as an inducement to enter into the contract for the purchase of the Property. These statements were made knowingly and were false at the time they were made. Furthermore, the omissions reinforced the false statements, and the omissions were made with the knowledge that they constituted an inducement to the Fannings to enter into a contract they would not have made, had the truth been told.

The Fannings further allege that the Kesslers "knew or should have known that the Property suffered from flooding . . . and that the foundation had suffered as a consequence, as evidenced by the cracks which Defendants had covered with mortar." All of the Fannings' allegations revolve around the Kesslers' alleged intentional acts. Therefore, no accident occurred.

Similarly, misrepresentations and failures to disclose are not "conditions" that a person or property can be "exposed" to under the policies. In *Houston Petroleum Co. v. Highlands Ins. Co.*,[35] the Houston Court held that

exposure to "fraudulent promises, false representations, and untrue statements" does not, as a matter of law, fall within the plain meaning of the definition of "occurrence." To hold otherwise would require us to unnaturally extend the definition of the term "conditions."[36]

**33.** *Maupin*, 500 S.W.2d at 635; *Misle v. State Farm Mut. Auto. Ins. Co.*, 908 S.W.2d 289, 291 (Tex.App.—Austin 1995, no writ).

**34.** *Decorative Center of Houston v. Employers Casualty Co.*, 833 S.W.2d 257, 262 (Tex.App.—Corpus Christi 1992, writ denied); *Baldwin v. Aetna Casualty & Sur. Co.*, 750 S.W.2d 919, 921 (Tex.App.—Amarillo 1988, writ denied).

**35.** 830 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

**36.** *Id.* at 156; *see also Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1128 (5th Cir. 1993) (alleged inducement to invest through false representations not exposure to conditions and therefore not occurrence); *Metropolitan Prop. & Cas. Co. v. Murphy*, 896 F.Supp. 645, 648 (E.D.Tex.1995) (any alleged misrepresentations or failure to disclose under DTPA not an occurrence).

In *Safeco Ins. Co. of America v. Andrews,*[37] a seller's misrepresentations about the condition or defects of the property to be sold were specifically held not to fall within the definition of occurrence.[38] The Ninth Circuit noted that even though the condition of the property was an element of the underlying suit, it was not the *cause* of the damages.[39] The cause of the damages was the alleged misrepresentations.[40]

In the case at bar, the Kesslers argue that the cause of the Fannings' alleged damages is the improper drainage of the property. But the improper drainage occurred *before* the Fannings' causes of action accrued. Damages do not precede their cause. The Kesslers' alleged misconduct triggered the Fannings' claims, not the improper drainage.

To fit the cause of action into the definition of "occurrence," we would have to violate the plain-meaning rule of contract interpretation and stretch "conditions" to include voluntary, wrongful acts of the insured. This we are not willing to do.

### DECISION

We hold that State Farm has no duty to defend the Kesslers in the Fanning litigation because the Fannings did not allege claims for property damages or for damages caused by an occurrence or loss. We therefore sustain State Farm's points of error, reverse the judgment of the trial court, and render judgment in favor of State Farm.

---

**37.** 915 F.2d 500 (9th Cir.1990).

**38.** *Id.* at 502; *see also Morgan,* 806 F.Supp. at 1464 (loss of use and enjoyment of property resulting from misrepresentation of insured is not an "occurrence" even though unforeseeable and even if negligent or unintentional).

**39.** *Safeco,* 915 F.2d at 502.

