# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00477-CV

**Richard and Nancy Jennings, Appellants**

**v.**

**State Farm Lloyds and State Farm Fire and Casualty Company, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN200696, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

After appellants Richard and Nancy Jennings were sued by Joseph and Patricia Rotunda, the purchasers of a house from the Jenningses, the Jenningses asked their insurers, State Farm Lloyds and State Farm Fire and Casualty Company (the "State Farm defendants"), to defend the lawsuit. The State Farm defendants ultimately declined. After settling with the Rotundas, the Jenningses sued the State Farm defendants for a declaration that they owed the Jenningses a duty to defend, and the parties each sought summary judgment on that issue. Finding no duty to defend, the

district court granted summary judgment in favor of the State Farm defendants. The Jenningses appealed. We will affirm.

## BACKGROUND

### The Rotunda lawsuit

We take the following factual summary from the allegations in the Rotundas' petition. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) (duty to defend is triggered solely by factual pleadings and language of policies, without regard to truth or falsity of pleadings). In early to mid-2000, the Rotundas, who were touring Austin homes in anticipation of moving there, became interested in purchasing a home owned by the Jenningses that was still under construction. During negotiations, the Rotundas "made specific inquiries about the dimensions and encumbrances of the property," "made great efforts to confirm the work that would be performed on the property both before and after closing," and "verified that the work would be performed in a good and workmanlike manner." The Rotundas wanted a set move-in date on which they would also close the transaction. They ultimately agreed to a date insisted on by the Jenningses that was months earlier than the Rotundas desired. "The Jennings [sic] through their agents and the Deane Defendants [(the homebuilder)] made definitive representations orally and in writing concerning these points."

On the agreed-upon move-in and closing date, the Rotundas and two tractor-trailers completed a cross-country journey, arrived at the home ready to unload, and were advised that the home was not ready and that they could not move in without first closing on the home. The Rotundas closed on the home and, to the extent possible, unpacked their belongings.

2

Despite representations that the home would be brought to habitability standards within two weeks, that process took over two months. The Rotundas experienced great inconvenience while attempting to live in the home with construction going on around them. "More important, the home never reached the completion stage as promised."

Following move-in, the Rotundas also discovered other significant misrepresentations and omissions by the Jenningses and the Deane Defendants:

- Failure to disclose a two-foot wide concrete footer supporting a retaining wall.

- Failure to disclose that the irrigation line for the sprinkler system would encumber the neighboring property.

- Promising, but failing to provide, a separation between the Rotundas' home and the neighbors' home of stone and stucco barriers, topped and broken by trees and landscaping.

- Failure to perform promised construction and repair to the driveway.

- Failure to pay their agreed share of property taxes for 2000.

- Failure "to perform the promised installation of the sprinkler system in a workmanlike manner."

- Failure "to properly locate irrigation lines for the Rotundas' backyard."

- Failure "to perform the promised landscaping and construction of the pool and provision for drainage connections in a workmanlike manner."

- Failure to properly perform promised corrective work to prevent flooding in the garage.

- Failure "to perform the promised painting in a workmanlike manner."

Relying on these factual allegations, the Rotundas filed suit against the Jenningses and the Deane Defendants asserting causes of action for breach of the agreement, violation of the Deceptive Trade Practices Act (DTPA), fraudulent misrepresentation, fraudulent concealment or failure to disclose, statutory fraud by both factual misrepresentation and false promise, conspiracy, and negligent misrepresentation. The Rotundas sought $131,373 in actual damages as of the time they filed their petition, plus punitive and additional damages, attorney's fees, and costs. They did not specify the nature of their actual damages other than to quantify that the Jenningses' alleged unpaid share of property taxes was $1,674 and that the Deane Defendants overcharged them by $3,750 on landscaping.

**The coverage dispute**

At all relevant times, the Jenningses held a Texas Homeowners Policy – Form B ("HO-B policy"), issued by State Farm Lloyds, and a Personal Liability Umbrella Policy ("umbrella policy"), issued by State Farm Fire and Casualty Company. The Jenningses presented the Rotundas' lawsuit to the State Farm defendants and requested a defense under either or both policies. After initially providing a defense under a reservation of rights, the State Farm defendants withdrew it. The Jenningses filed suit seeking a declaration that State Farm Lloyds had a duty to defend them under their HO-B policy. The Jenningses subsequently settled with the Rotundas. The Jenningses then amended their petition to add various claims for monetary relief; they also joined State Farm Fire and Casualty as a defendant, seeking a declaration that it owed a duty to defend them under the umbrella policy.

The State Farm defendants filed a motion seeking summary judgment that neither of them owed the Jenningses a duty to defend the Rotundas' lawsuit and that the Jenningses take nothing on their claims. The Jenningses filed a response and a cross-motion for partial summary judgment that the State Farm defendants did owe such a duty. The district court granted the State Farm defendants' motion, denied the Jenningses' motion, and rendered a take-nothing judgment in the defendants' favor. This appeal followed.

## DISCUSSION

The Jenningses bring a single issue on appeal: whether the district court erred in granting summary judgment for the State Farm defendants and, in particular, determining that the Rotundas' petition did not invoke a duty to defend under either the HO-B policy or the umbrella policy.

### Standard and scope of review

We review the district court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16). Where, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we should review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered.

5

*Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We must affirm summary judgment if any of the summary-judgment grounds are meritorious. *Patient Advocates*, 136 S.W.3d at 648; *FM Props.*, 22 S.W.3d at 872.

The parties seem to agree that there are no factual disputes to be resolved in this case and that our disposition turns entirely on pure questions of law—our construction of the Rotunda petition and the Jenningses' two insurance policies.[1] To determine whether either State Farm defendant owed a duty to defend the Jenningses, we look to the "eight corners" of the petition and each policy (the "four corners" of each instrument), comparing the facts alleged in the petition with the language of each policy to determine whether the petition alleges acts within the policy's scope of coverage. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). When applying this rule, we are to focus on the factual allegations that show the origins of the alleged damages rather than on the legal theories pleaded, give a liberal interpretation to the factual allegations, and resolve doubts in favor of coverage. *Hallman*, 159 S.W.3d at 643; *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141. Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. *Id*. at 141 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). If an insurer owes

---

[1] Neither party has pleaded that the policies are ambiguous.

a duty to defend any of the claims against its insured, that duty extends to the entire suit. *See Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004); *CU Lloyd's v. Main St. Homes, Inc.*, 79 S.W.3d 687, 692 (Tex. App.—Austin 2002, no pet.).

Our analysis of whether a duty to defend arises differs from that regarding whether an insurer must indemnify a policyholder for losses covered under a policy. *See American Indem. Co.*, 141 S.W.3d at 203 (duty to defend and duty to indemnify are distinct and separate duties). Whether a duty to indemnify exists depends upon the *true* facts underlying a claim, while a duty to defend is controlled by whether the pled factual allegations, liberally construed, *potentially* assert a covered claim. *See Cowan*, 945 S.W.2d at 821-22.

**Policy language**

The Jenningses contend that the Rotunda petition invoked a duty to defend under both their HO-B policy and their umbrella policy. The Jenningses rely on the following provision in the section II – Liability portion of the HO-B policy:

> **Coverage C (Personal Liability)**
>
> If a claim is made or a suit is brought against an insured for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will . . .
>
> > 2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent.

The HO-B policy includes the following definitions:

6. "**Occurrence**" means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

7. "**Property damage**" means injury to, destruction of, or loss of use of property.

The Jenningses rely on similar language in their umbrella liability policy:

**COVERAGES**

1. **Coverage L–Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will indemnify you for your **net loss** minus the **retained limit** . . . .

2. **Defense and Settlement.**

. . .

b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:

(1) we will defend the suit against you.

"Loss" is defined as "an accident that results in **personal injury** or **property damage** during the policy period. This includes injurious exposure to conditions." "Property damage," in turn, is defined as "physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction." To summarize, both policies, in relevant part, cover "property damage" (defined as injury to, destruction, or loss of use of property) caused by an "accident." The State Farm defendants state that the Jenningses' "umbrella policy . . . provides the same coverages" as their HO-B policy except that the former "adds $2 million in liability limits."

8

The parties' dispute centers on whether the Rotunda petition alleges "property damage" caused by an "occurrence" or "loss" (*i.e.*, accident).[2]

**"Property damage"**

The Jenningses assert that the following portions of the Rotunda petition allege "property damage":

- Failure to disclose a two-foot wide concrete footer supporting a retaining wall.

- Failure "to perform the promised installation of the sprinkler system in a workmanlike manner."

- Failure "to perform the promised landscaping and construction of the pool and provision for drainage connections in a workmanlike manner."

- Failure "to properly perform promised corrective work to prevent flooding in the garage."

- Failure "to perform the promised painting in a workmanlike manner."

- Failure "to properly locate irrigation lines for the Rotundas' backyard."

"Given their plain and obvious meaning," the Jenningses urge, "these allegations state that action or inaction on the part of the Jennings[es] and the Deane Defendants resulted in injury to the property."

The Jenningses add that the Rotundas also alleged loss of use constituting property damage under the policies: "[a]t one point, the Rotunda[s] were forced to vacate the home for 4-5

---

[2] The Jenningses do not contend that the Rotunda petition sought damages for "bodily injury" under the HO-B policy or "personal injury" under the umbrella policy.

days because the Deane Defendants failed to correct a plumbing problem [] the Deane Defendants assured the Rotundas would be corrected immediately at time of move-in." The Jenningses argue that this allegation, combined with a later allegation in their DTPA pleading that "[t]he Jennings[es] and [Michael Deane Homes] are vicariously liable for the conduct of the other," constituted an allegation that the Jenningses caused loss-of-use property damage.

In response, the State Farm defendants characterize the above-cited pleadings as alleging "typical 'seller misrepresentation' type claims" regarding pre-existing conditions on the property, and do not allege that the Jenningses caused injury or destruction to, or loss of use of, property. They also assert that the Rotundas sought only economic damages for mispresentations about property conditions rather than damage to the property itself. They rely heavily on *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App.—Fort Worth 1996, writ denied), in which the Fort Worth court construed homeowner's and umbrella policy provisions identical to those here. In *Kessler*, the Fannings sued the Kesslers for breach of contract, breach of warranty, and DTPA violations after the Kesslers allegedly made misrepresentations about the Kesslers' home to induce the Fannings to purchase it. *Id*. at 734. Specifically, the Fannings alleged that the Kesslers assured them that the property did not have drainage or foundation problems when it in fact had severe drainage and foundation problems. *Id*. The Fort Worth court of appeals held that the allegations of drainage and foundation problems made subject to the Fannings' misrepresentation claims did not allege "property damage" because the Fannings did not assert that the Kesslers injured the property, destroyed the property, or caused the resulting loss of use. *Id*. at 737. Instead, the Fannings alleged only that the Kesslers misrepresented pre-existing problems. *Id*. ("The Kesslers' alleged

10

misrepresentations did not cause the drainage and foundation problems; those problems existed before negotiations began.")

The *Kessler* court further reasoned that the monetary relief sought by the Fannings was limited to economic damages rather than property damage. *Id*. ("[i]n Texas, economic damages are not property damages as defined by liability insurance policies") (citing *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686-87 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)). These "economic damages" were comprised of "repair costs to restore the property to the condition at which the Kesslers represented it and loss of use and enjoyment because of the Kesslers' allegedly wrongful conduct." *Id*. The court added that the Fannings' economic damages, "including loss of use," arose because of the Kesslers' alleged misrepresentations—because the Fannings did not get the property they bargained for. *Id*.

As for the Jenningses' loss of use allegations, the State Farm defendants contend that "there is only an economic damage component associated with the plumbing 'loss of use'" alleged in the Jenningses' DTPA cause of action. The State Farm defendants observe that, later in the DTPA pleading, the Jenningses sought to treble "the economic damages for which the Jennings[es] and [the homebuilder's] conduct acted as the producing cause." They point out that the *Kessler* court held that a "loss of use" allegation seeking the "repair cost to restore the property to the condition . . . represented" did not allege property damage. *Kessler*, 932 S.W.2d at 737.

The Jenningses would distinguish *Kessler* on the basis that the Rotunda petition alleges that the Jenningses injured or destroyed the property through action or inaction. *See Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 254-56 (Tex.

11

App.—Dallas 1993, writ denied) (drainage problems and floor displacement fell within "property damage" when petition alleged that insured was "negligent in disbursing funds for construction of the property and in failing to correct the alleged defects in the property"); *see also Kessler*, 932 S.W.2d at 737 (distinguishing *Cullen/Frost Bank* on basis that "the Dallas Court could have found that the insured in that case caused the problems with the property, a situation that we do not have here").

Nowhere does the Rotunda petition explicitly allege that the Jenningses injured or destroyed the house or lot. Of the allegations on which the Jenningses rely,[3] one alleges failure to disclose a condition that is not alleged to have been created by the Jenningses,[4] four complain of shoddy workmanship in performing "promised" construction,[5] and one complains of failure "to properly locate irrigation lines for the Rotundas' backyard." The first allegation is similar to those addressed in *Kessler*, and does not allege property damage. *See Kessler*, 932 S.W.2d at 737. The remaining allegations, as the Jenningses urge, differ from those in *Kessler* inasmuch as they do not concern pre-existing property conditions, but conditions allegedly created by the Jenningses or their agents. But these allegations also stop short of asserting that the Jenningses or their agents

---

[3] The Jenningses do not contend that the following additional allegations in the Rotunda petition assert property damage: failure to disclose that the irrigation line for the sprinkler system would encumber the neighboring property, failure to pay their agreed share of property taxes for 2000, failure to perform promised construction and repair to the driveway, and failure to provide a promised separation between the Rotundas' home and the neighbors' home.

[4] Failure to disclose a two-foot wide concrete footer supporting a retaining wall.

[5] Failure "to perform the promised installation of the sprinkler system in a workmanlike manner," "to perform the promised landscaping and construction of the pool and provision for drainage connections in a workmanlike manner," "to properly perform promised corrective work to prevent flooding in the garage," and "to perform the promised painting in a workmanlike manner."

12

affirmatively *injured* or *harmed* the *property*. Instead, the gravamen of four of these claims is that through poor workmanship, the Jenningses failed to live up to promises they made to the Rotundas. These types of allegations, as *Kessler* makes clear, are economic damages claims, not property damages claims. *See id*.

As for the remaining allegation regarding location of the irrigation lines, a reading of the Rotunda petition as a whole reveals that this complaint concerns the improper placement of lines so as to encumber the neighboring property. Thus, even if an allegation of improper irrigation line placement might otherwise suffice as an allegation of property damage, it would impact property other than the insured property.

The same is true of the Jenningses' contentions about the Rotundas' allegation that they "were forced to vacate the home for 4-5 days because the Deane Defendants failed to correct a plumbing problem[] the Deane Defendants assured the Rotundas would be corrected immediately at time [sic] of move-in." Again, the Rotundas' alleged damages flow from the Deane Defendants' alleged failure to live up to their promise to correct a plumbing problem, not any injury or damage to the property itself caused by the Jenningses. *See id*.

The Jenningses emphasize the principles that we should construe the Rotunda petition liberally, find coverage if the allegations potentially state injury or damage to property, and resolve doubts in favor of coverage. *See Hallman*, 159 S.W.3d at 643; *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141. However, "liberal interpretation" and "resolving doubts in favor of coverage" do not authorize us to read facts into the pleadings, look outside of the pleadings, or "imagine factual scenarios which might trigger coverage." *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 142.

13

To find that the Rotundas alleged property damage, we would have to read into their pleadings allegations of property injury or destruction that are simply not present.

Because we hold that the Rotunda pleadings do not allege property damage within the HO-B or umbrella policies, the district court did not err in granting summary judgment that the State Farm defendants owed no duty to defend the Jenningses. We accordingly need not reach the issue of whether the damages arose from an "occurrence" or "loss" under the policies. We overrule the Jenningses' sole issue.

## CONCLUSION

Because the Rotundas did not allege "property damage," the State Farm defendants did not have a duty to defend the Jenningses. We affirm the district court's grant of summary judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: January 12, 2006

14