



# MEMORANDUM OPINION

No. 04-12-00190-CV

Wendy Rutherford **BRANHAM**,
Appellant

v.

**STATE FARM LLOYDS**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-18919
Honorable Olin B. Strauss, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 12, 2012

AFFIRMED

Wendy Rutherford Branham appeals a summary judgment granted in favor of State Farm Lloyds.  The trial court concluded that State Farm Lloyds had no duty to defend or indemnify Branham in relation to a claim against her for misrepresentations she allegedly made in selling her home.  On appeal, Branham asserts the trial court erred in granting the summary judgment because: (1) State Farm Lloyds had a duty to defend the claim; (2) Branham is entitled to indemnity despite voluntarily settling the claim because State Farm wrongfully denied a defense

of the claim; and (3) the intentional act exclusion of Branham's policy did not apply. We disagree with Branham's contentions and affirm the trial court's judgment.

## BACKGROUND

Branham sued State Farm Lloyds for failing to provide a defense and indemnity with regard to a lawsuit filed against her by Patrick and Melissa McCullough. The McCulloughs' lawsuit was based on a contract they entered into with Branham to purchase a home from her. In their petition, the McCulloughs alleged that Branham "falsely represented that there was no (1) previous flooding into the home, (2) water penetration into the home, (3) active infestation of termites or other wood destroying insects, (4) previous termite or wood destroying insect damage repaired, and (5) termite or wood destroying insect damage needing repair." The McCulloughs further alleged that Branham "failed to disclose to Plaintiffs the previous problems with water penetration and damage to the home and that Ms. Branham had filed a homeowners' insurance claim for water damages sustained in the home." The McCulloughs also claimed that although Branham "was paid on these water damage claims by her homeowners' insurance carrier," she "did not make proper repairs to the home or if she did, only made cosmetic repairs to conceal the damages." The McCulloughs asserted numerous causes of action against Branham based on these allegations including: (1) fraudulent concealment for making affirmative false representations or omitting to disclose material facts, alleging the representations and concealments were "made with knowledge of the real facts;" (2) breach of contract for "failing to disclose the home's previous water penetration problems and damages, thereby, fraudulently inducing Plaintiffs into entering the contract;" (3) negligence for failing to properly disclose the condition of the home; (4) DTPA violations; (5) negligent misrepresentations by supplying false information and not exercising reasonable care or competence in communicating the

information; (6) common-law fraud and fraud by non-disclosure; and (7) violation of section 27.01 of the Texas Business and Commerce Code for making misrepresentations in a transaction involving real estate that Branham knew were false.

The parties filed competing motions for summary judgment. State Farm Lloyds's motion asserted it had no duty to defend or indemnify Branham because: (1) the McCulloughs' petition did not allege damages arising from a covered occurrence; (2) the McCulloughs' petition did not seek property damages as defined by Branham's policy; and (3) the policy excluded coverage for intentional conduct. The trial court granted State Farm Lloyds's motion and entered a take nothing judgment on Branham's claims.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We must therefore consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When competing motions for summary judgment are filed, and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

## DUTY TO DEFEND

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Id.*

"Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts," and "when terms are defined in an insurance policy, those definitions control." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997).

Branham acknowledges that several of our sister courts have held that an insurance carrier has no duty to defend a homeowner who makes misrepresentations in selling a home. *See Huffhines v. State Farm Lloyds*, 167 S.W.3d 493 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Freedman v. Cigna Ins. Co.*, 976 S.W.2d 776 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App.—Fort Worth 1996, writ denied). Branham argues, however, that the facts in those cases are distinguishable, at least with regard to Branham's negligence claims, or, alternatively, that the holdings in these decisions are questionable under the Texas Supreme Court's holding in *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007).

### A.    *Cases Holding No Duty to Defend*

In *Kessler*, John and Alison Fanning sued Paul and Mary Kessler for breach of contract, breach of warranty, and DTPA violations arising from the Kesslers' sale of their home to the Fannings. 932 S.W.2d at 734. The Fannings alleged the Kesslers misrepresented that the home had no drainage or foundation problems when the home actually had severe drainage and foundation problems. *Id*. The Fannings further alleged that the Kesslers knew the statements were false when they made them. *Id*. The trial court signed a judgment declaring that the Kesslers' insurance company, State Farm, had a duty to defend the Kesslers. *Id*. at 733. The Fort Worth court reversed the trial court's judgment, holding State Farm did not have a duty to defend because: (1) the Fannings' petition did not allege property damage as defined by the policy; and (2) the Fannings' petition did not allege damages arising from an occurrence or loss

as defined by the policy. *Id*. at 734. We will focus our analysis on the definition of occurrence or loss.

In order for State Farm to have a duty to defend under the Kesslers' policies, the alleged damages had to result from an "occurrence" or "loss." *Id*. at 738. The policies defined occurrence and loss as an "accident" that results in property damage. *Id*. The Fort Worth court then noted, "Under Texas law, when the insured's acts are voluntary and intentional, the results or injuries, even if unexpected, are not caused by an 'accident,' and therefore the event is not an 'occurrence' under the policy." *Id*. The Fannings' petition alleged the Kesslers made statements concerning the property that they knew or should have known were false, especially given allegations that the Kesslers attempted to cover up the problem. *Id*. Accordingly, the Fort Worth court held that all of the Fannings' allegations revolved around the Kesslers' alleged intentional acts; therefore no accident occurred. *Id*.

In *Freedman*, Alfred and Sylvia Freedman sold their house to the Marxes. 976 S.W.2d at 777. The Marxes subsequently learned that the roof had needed repairs while the Freedmans lived there and sued the Freedmans for not disclosing the problems with the roof, alleging the Freedmans intentionally defrauded them. *Id*. The Marxes alleged causes of action for DTPA violations, common-law fraud, fraud in a real estate transaction, and negligence. *Id*. The Freedmans' insurers, Cigna Insurance Company of Texas and Insurance Company of North America, refused to defend the Freedmans, and the Freedmans eventually settled the Marxes' suit. *Id*. The Freedmans then sued Cigna and ICNA. *Id*. Cigna and ICNA moved for summary judgment, asserting as one ground that they had no duty to defend the Freedmans because the Marxes sued them for an event that was not an "occurrence" under the insurance policies. *Id*. The trial court granted the motion, and the Houston court affirmed. *Id*.

The definition of "occurrence" in the Freedmans' policies was the same as the definition in the Kesslers' policies, defining "occurrence" as an "accident" resulting in property damage. *Id*. at 778. The Houston court noted, "An accident is commonly defined as an unexpected happening without intention or design." *Id*. The court further noted, "As a matter of law, fraudulent promises, misrepresentations, and untrue statements do not fall within the plain meaning of the definition of an occurrence." *Id*. Although the Freedmans represented the roof on the house needed no repair, the Marxes alleged that the roof was repaired at least 18 times in the seven years preceding the sale, 12 times in the preceding four years, and 3 times while the property was listed for sale, and the Freedmans took affirmative steps to conceal the roof defect. *Id.* The Houston court held, "On the face of the Marxes' pleadings, the event for which the Freemans sought coverage was an intentional act," *i.e.*, their statements to the Marxes, "and not an 'accident.'" *Id*.

The Houston court then examined the effect of the Marxes pleading negligence as an alternative to fraud. *Id*. The court noted, "The label the plaintiff puts on the cause of action is not controlling; it is the allegation of the facts which give that control." *Id*. The court further noted, "The Marxes alleged that the Freedmans intentionally omitted any mention of the roof's problems in their oral and written representations" and "claimed the Freedmans destroyed records of roof repair, and fixed the water damages to conceal any evidence of the problems." *Id.* at 779. The court concluded that the Marxes alleged intentional acts by the Freedmans and reasoned, "Even though the Marxes added negligence as an alternative claim, the mere allegation of negligence does not control the issue of duty to defend. The facts alleged by the Marxes control, and the facts do not give rise to a duty to defend." *Id*.

Finally, the decision in *Huffhines* contains reasoning similar to *Kessler* and *Freedman*. In *Huffhines*, the sellers received an engineering report on the property before the sale detailing various defects; however, the sellers assured the buyers that they were unaware of anything on the property in need of repair. 167 S.W.3d at 495. The buyers later sued the sellers, alleging common law fraud, statutory fraud, DTPA violations, and negligence, and State Farm denied any duty to defend. *Id*. at 496. Once again, the analysis focused on whether the buyers had alleged property damage resulting from an "occurrence," which was similarly defined by the policy in question as an "accident." *Id*. at 498.

The Houston court noted, "'whether an event is [an] accident is determined by its effect.'" *Id*. (quoting *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997)). The Houston court further noted that an effect is produced by accidental means if the actor did not intend to produce the effect and the actor cannot be charged with the design of producing the effect. *Id*. The Houston court then reasoned that the event or conduct alleged by the buyers in *Huffhines* was the sellers assuring the buyers they were not aware of any defects when the sellers had knowledge of defects. *Id*. at 499. The Houston court then held that the damages resulting from the undisclosed defects were an effect the sellers could be charged with producing and, therefore, was not an accident. *Id*. Following the reasoning in *Freedman*, the court also held State Farm did not have a duty to defend against the buyers' negligence claim, asserting, "A mere characterization of negligence, alternatively made, is insufficient to convert claims based on knowing misrepresentation into a claim for recovery of property damage caused by an accident within the meaning of the insurance policies." *Id*. at 501.

We find the reasoning in *Kessler*, *Freedman*, and *Huffhines* persuasive. Branham contends those decisions are factually distinguishable based on the extent of the

misrepresentations in those cases because she could have "negligently" forgotten about the prior damage and insurance claim in the instant case. The McCulloughs, however, do not allege that Branham forgot about the prior damage. *See Huffhines*, 167 S.W.3d at 497 (courts "will not read facts into the petition" or "look outside of the petition, or imagine factual scenarios which might trigger coverage"). Instead, the McCulloughs' factual allegations assert Branham made false representations and made cosmetic repairs to conceal the prior damage for which she received insurance proceeds to repair. The McCulloughs' "mere characterization of negligence, alternatively made, is insufficient to convert [their claims] based on knowing misrepresentation into a claim for recovery of property damage caused by an accident within the meaning of the insurance polic[y]." *Id.* at 501.

### B.    *Texas Supreme Court's Ruling in Lamar Homes*

Branham also contends that these prior decisions have questionable precedential value after the Texas Supreme Court's decision in *Lamar Homes*. We disagree. The manner in which the Texas Supreme Court defined the term "accident" in *Lamar Homes* is consistent with these prior decisions. In *Lamar Homes*, the court explained, "An accident is generally understood to be a fortuitous, unexpected, and unintended event." 242 S.W.3d at 8. An accident occurs "as the culmination of forces working without design, coordination, or plan." *Id.* "[A]n intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected." *Id.* "But a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Id.* "Thus, a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and

expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id*. at 9. In the instant case, the damages resulting from Branham's misrepresentation of known facts, as alleged by the McCulloughs, were not unexpected but were the natural and expected result of Branham's design or plan to conceal the true facts. Moreover, the McCulloughs clearly allege that Branham intended the injury. Accordingly, we read the definition of the term "accident" in *Lamar Homes* as being consistent with the holdings in *Kessler*, *Freedman*, and *Huffhines*, and hold that the trial court did not err in concluding that State Farm did not have a duty to defend Branham in the McCulloughs' lawsuit.

## DUTY TO INDEMNIFY

Branham's argument regarding State Farm's duty to indemnify is based on her contention that State Farm breached its duty to defend. Because we have held State Farm did not breach its duty to defend, Branham's argument fails. Moreover, since any money paid by Branham in settlement of the McCulloughs' claim could not be for property damages resulting from an "occurrence," State Farm did not have a duty to indemnify Branham.

## CONCLUSION

Based on the allegations in the McCulloughs' petition and the definition of occurrence in Branham's insurance policy, we conclude State Farm did not have a duty to defend Branham against that petition.[1] The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

---

[1] Because we hold no duty to defend exists based on the absence of an occurrence, we need not address whether the damages alleged by the McCulloughs were property damages as defined by the policy or the applicability of the intentional act exclusion which were alternative grounds asserted in State Farm's motion for summary judgment also challenged by Branham on appeal. *See* TEX. R. APP. P. 47.1.